WESTPARK OWNERS' ASSOCIATION, A NONPROFIT CORPORATION, PETITIONER, v. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, AND THE HONORABLE NANCY M. SAITTA, DISTRICT JUDGE, RESPONDENTS, AND WESTPARK ASSOCIATES, LLC, A NEVADA LIMITED LIABILITY COMPANY; AND OXBOW CONSTRUCTION, LLC, A NEVADA LIMITED LIABILITY COMPANY, REAL PARTIES IN INTEREST.

No. 48664

September 20, 2007                    167 P.3d 421

[Rehearing denied February 21, 2008]

---

[26]We vacate our order, entered on July 14, 2006, granting a stay pending the resolution of this petition.

*Feinberg Grant Mayfield Kaneda & Litt, LLP*, and *Bruce G. Mayfield, Roger J. Grant, Charles M. Litt*, and *Daniel H. Clifford*, Las Vegas, for Petitioner.

*Ellis & Gordon* and *Aviva Y. Gordon*, Las Vegas; *Lee & Russell* and *David S. Lee*, Las Vegas, for Real Parties in Interest.

Before the Court EN BANC.[1]

## OPINION

By the Court, MAUPIN, C. J.:

This case comes to us by way of an original petition for a writ of mandamus or prohibition. In granting this petition in part, we consider and determine the scope of Nevada's residential constructional defect statutes, contained within NRS Chapter 40 from NRS 40.600 through NRS 40.695. In general, this legislation sets

---

[1]THE HONORABLE NANCY M. SAITTA, Justice, voluntarily recused herself from participation in the decision of this matter.

forth rights and remedies of homeowners, developers, and building contractors when disputes over constructional defects arise in connection with new homes or modifications to existing residential dwellings.[2]

Petitioner Westpark Owners' Association (Association), a 144-unit condominium homeowners' association, gave written notice of constructional defects under NRS Chapter 40 to the project developer and contractor, real parties in interest Westpark Associates, LLC, and Oxbow Construction, LLC (collectively, Westpark). In response, Westpark filed a preemptive declaratory relief action in the district court seeking, among other things, a judicial determination that the Association could not proceed against Westpark under NRS Chapter 40 or otherwise. This petition challenges the respondent district court's entry of partial summary judgment in the declaratory relief action in favor of Westpark.[3]

## SUMMARY OF DECISION

NRS Chapter 40 provides Nevada homeowners with a remedial process for asserting claims against "contractor[s]"[4] for defects in the construction of a "new residence" or for defects in the "alteration of or addition to an existing residence."[5] Although NRS 40.630 defines a "residence" as "any dwelling in which title to the individual units is transferred to the owners," nowhere in Chapter 40 does the Legislature define the term "new residence." Important to this decision, however, is that rental apartment units are not residences for the purposes of Chapter 40.

With these precepts in mind, the district court determined that 108 of the 144 Westpark condominium units had been originally developed as apartments and thus, despite their ultimate sale to the Association's members, those units could not be the subject of relief under NRS Chapter 40. It additionally determined that the units, after their sale to the public as condominiums, were not "new" residences subject to the Chapter 40 legislative scheme.

---

[2]*See* NRS 40.615 (defining "constructional defect"). While NRS Chapter 40 embraces a broad range of actions and proceedings concerning property disputes beyond constructional defect claims, the residential constructional dispute provisions found in NRS 40.600 through 40.695 have become known in common parlance as "Chapter 40 remedies." *See Olson v. Richard*, 120 Nev. 240, 243, 89 P.3d 31, 33 (2004) (noting that "the Legislature enacted Chapter 40 to aid in resolving construction defects disputes between contractors and homeowners"). As stated, Chapter 40 is not restricted to constructional defect claims.

[3]*See* NRCP 56.

[4]NRS 40.640.

[5]NRS 40.615.

Beyond Chapter 40, the district court order also foreclosed relief of any kind concerning these homes.

In summary, for NRS Chapter 40 remedies to apply, affected dwellings must be "residences" under NRS 40.630 and be either "new" or include newly completed improvements under NRS 40.615. Because title to the condominium units constructed by Westpark transferred to individual purchasers at the time of sale, we conclude that the 108 units clearly qualified as "residences" under the plain meaning of NRS 40.630. Unfortunately, whether the units were "new" cannot be resolved under a plain reading of NRS 40.615. Accordingly, because the Legislature has not seen fit to define what constitutes a "new" residence for the purpose of lodging statutory constructional defect claims, we must interpret Chapter 40 and provide a reasonable definition of that term. As discussed below, we determine that, for the purposes of NRS Chapter 40, a residence is "new" only if it is a product of original construction that has been unoccupied as a dwelling from the completion of its construction to the point of sale. Because the homes in question in this case were occupied for a period of years by residential tenants before their ostensible "conversion" or re-lease for sale to the general public by Westpark, we conclude that the homes were not "new" residences covered by NRS Chapter 40.

The NRS Chapter 40 statutory scheme applies exclusively to constructional defect claims lodged in connection with new residences as defined in this opinion and to newly effected improvements to existing residences. In the underlying proceedings, the district court was required to determine whether the units constructed by Westpark were "new" under NRS 40.630 or included newly completed improvements under NRS 40.615, and whether any of the Association's non-Chapter 40 claims for negligence and breach of warranty survived. While the court correctly determined that the units in question were not "new" residences covered by the NRS Chapter 40 remedial scheme,[6] it erred in foreclosing any opportunity to litigate the Association's constructional defect claims arising from any additions, modifications, or alterations to the units undertaken by Westpark in preparation for their release for sale. To the extent the provisions of Chapter 40 did not apply to the Association's claims, the district court also erred in foreclosing the Association's non-Chapter 40 claims.

For the reasons stated below, we grant the petition in part and instruct the district court to consider whether and the extent to

---

[6]As explained *infra*, the district court erred in its conclusion of law that the 108 units were not "residences" under the statute, but it correctly determined that the units were not "new."

which any of the alleged defects arose from alterations or additions made in preparation for sale, and whether any of the Association's non-Chapter 40 claims survive.[7]

## FACTS AND PROCEDURAL HISTORY

This case involves a residential development located in Las Vegas, Nevada. An entity known as Park Lake Partnership originally developed the project on a partial basis, including common areas and 36 residential condominium units. All of the 36 units were sold in the initial release to the general public.

Park Lake eventually declared bankruptcy without completing the project. In the course of the Park Lake bankruptcy proceedings, Westpark acquired the property and ultimately built an additional 108 units within the complex. However, due to a decline in the local real estate market, Westpark opted to lease the added units rather than immediately offer them for sale. These units were referred to as "apartments," rather than "condominiums" in several loan financing documents. Nonetheless, the building permits and certificates of occupancy identified the units as "new condominiums" and, at the completion of construction, Westpark annexed the 108 units into the existing homeowners' association, forming the 144-unit "Westpark Owners' Association."

Westpark leased the additional 108 units to individual tenants from 1997 until 2003, when it began to offer the units for sale on the open market. It entered into separate sales agreements with each buyer, under which the buyer purportedly waived "any" possible constructional defect claims pursuant to NRS Chapters 40 and 116.[8]

Some months later, following problems encountered within the project, the Association served Westpark with a formal NRS Chapter 40 notice,[9] alleging numerous constructional defects. Westpark responded by filing a complaint for declaratory and injunctive relief. It alleged in the action that the Association had no rights against Westpark in connection with the original 36 units released by Park Lake; that the Association was barred from bringing any constructional defect claims under NRS Chapter 40 with respect to the 108 units, as the units were not "new" or constructed as "residences" within the provisions of NRS Chapter 40; and that the individual homeowners had waived their constructional defect

---

[7]We have further noted that the general waivers executed by Association members will be unenforceable to bar such claims. See infra notes 37-38.

[8]NRS Chapter 116, commonly known as the Uniform Common-Interest Ownership Act, provides certain rights and remedies with regard to condominium developments.

[9]See NRS 40.645 (requiring that claimant give written notice of constructional defects before filing a cause of action for a constructional defect).

claims in the individual contracts of sale. In response, the Association filed answers and counterclaims, alleging claims for breach of implied warranty, breach of express warranty, and negligence.

The district court ultimately entered partial summary judgment in favor of Westpark, declaring generally that Westpark had "no liability" in connection with the development or sale of the 108 later-constructed units. This determination was supported, in part, by the following conclusions of law in the written order:

- NRS 40.630 defines a "Residence" as any dwelling in which title to the individual units is transferred to the owners;

- NRS 40.615 defines "Constructional defect" as a defect in the design, construction, manufacture, repair or landscaping of a new residence, [sic] of an alteration of or addition to an existing residence;

- Oxbow was not a contractor as defined by NRS 40.620 because it constructed an apartment project where title to the individual units was not transferred;

- Westpark [Associates] was not a contractor as defined by NRS 40.620 because it developed an apartment project where title to the individual units was not transferred. Furthermore, when Westpark [Associates] did transfer title in 2003, it did not transfer title to a new residence as contemplated by NRS 40.615.

Beyond these explicit conclusions of law, the challenged order prevents the Association from pursuing *any* claims concerning the 108 units, thus also foreclosing any causes of action by the Association in connection with alterations or modifications Westpark may have made in preparing the units for sale, as well as non-Chapter 40 claims for breach of warranty or negligence.[10] This original writ petition challenges the district court's partial summary judgment in favor of Westpark. As indicated, we conclude that the Association may have limited rights to proceed under NRS Chapter 40 as well as to pursue non-Chapter 40 claims.

## DISCUSSION

*Propriety of writ relief*

A writ of mandamus is available "to compel the performance of an act which the law . . . [requires] as a duty resulting from an of-

---

[10]The district court denied summary judgment with respect to the 36 units and common areas constructed by Park Lake, to allow a period of discovery to determine whether Westpark or Oxbow had altered or improved those units.

fice, trust or station''[11] or to control a manifest abuse or an arbitrary or capricious exercise of discretion.[12] A writ of prohibition may likewise issue to arrest performance of an act or an order outside the jurisdiction of the trial judge.[13] Writs of mandamus and prohibition are both extraordinary remedies, and this court has discretion whether to consider such petitions.[14] Neither a writ of mandamus nor a writ of prohibition will issue if the petitioner has a ''plain, speedy and adequate remedy in the ordinary course of law.''[15] While we have held that an appeal is generally an adequate and speedy remedy precluding writ relief,[16] we have exercised our discretion to intervene ''under circumstances of urgency or strong necessity, or when an important issue of law needs clarification and sound judicial economy and administration favor the granting of the petition.''[17]

This case presents significant questions of law concerning the scope of constructional defect remedies under NRS Chapter 40. And, as acknowledged in previous decisions of this court, the purchase of a home is the largest investment most consumers will ever make.[18] Accordingly, interpretation of NRS Chapter 40 is a matter of great importance for thousands of homeowners throughout Nevada. Therefore, while the Association's eventual right to appeal from a final judgment below likely provides an adequate means to challenge the district court's partial summary judgment,[19] we conclude that sound judicial economy and administration favors our intervention at this time.

---

[11]NRS 34.160.

[12]See Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981).

[13]NRS 34.320; Houston Gen. Ins. Co. v. District Court, 94 Nev. 247, 248, 578 P.2d 750, 751 (1978).

[14]State of Nevada v. Dist. Ct. (Ducharm), 118 Nev. 609, 614, 55 P.3d 420, 423 (2002); Smith v. District Court, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991).

[15]NRS 34.170; NRS 34.330; see also Ducharm, 118 Nev. at 614, 55 P.3d at 423.

[16]See Guerin v. Guerin, 114 Nev. 127, 131, 953 P.2d 716, 719 (1998), overruled on other grounds by Pengilly v. Rancho Santa Fe Homeonwers, 116 Nev. 646, 5 P.3d 569 (2000).

[17]Ducharm, 118 Nev. at 614, 55 P.3d at 423.

[18]Calloway v. City of Reno, 116 Nev. 250, 261, 993 P.2d 1259, 1266 (2000).

[19]See Consolidated Generator v. Cummins Engine, 114 Nev. 1304, 1312, 971 P.2d 1251, 1256 (1998) (explaining that although an interlocutory order is not independently appealable, it may be challenged in the context of an appeal from the final judgment or order).

*Standards of review and statutory interpretation*

This court reviews questions of statutory interpretation, such as interpretation of NRS Chapter 40, de novo.[20] When the language of a statute is unambiguous, the courts are not permitted to look beyond the statute itself when determining its meaning.[21] However, when the Legislature has addressed a matter with "imperfect clarity," it becomes the responsibility of this court to discern the law.[22] Similarly, when a statute is susceptible to more than one reasonable but inconsistent interpretation, the statute is ambiguous, and this court will resort to legislative history and its rules of statutory interpretation.[23] Given an ambiguous statute, this court must interpret the statute "in light of the policy and the spirit of the law, and the interpretation should avoid absurd results."[24] Finally, this court will resolve any doubt as to the Legislature's intent in favor of what is reasonable.[25]

*Applicability of NRS Chapter 40 to the Association's claims*

NRS Chapter 40 provides a comprehensive procedural process for resolving constructional defect disputes between contractors and homeowners, under which a homeowner must provide notice of defects and give the contractor an opportunity to inspect and repair.[26] Although NRS Chapter 40 does not specifically create new theories of liability beyond those provided at common law upon which a constructional defect claim can be based,[27] NRS Chapter 40 remedies, including mandatory mediation,[28] "[p]revail over any conflicting law otherwise applicable to the claim or cause of action" but "[d]o not bar or limit any defense otherwise avail-

---

[20]*Marquis & Aurbach v. Dist. Ct.*, 122 Nev. 1147, 1156, 146 P.3d 1130, 1136 (2006).

[21]*Erwin v. State of Nevada*, 111 Nev. 1535, 1538-39, 908 P.2d 1367, 1369 (1995).

[22]*Baron v. District Court*, 95 Nev. 646, 648, 600 P.2d 1192, 1193-94 (1979).

[23]*Gallagher v. City of Las Vegas*, 114 Nev. 595, 599, 959 P.2d 519, 521 (1998).

[24]*Hunt v. Warden*, 111 Nev. 1284, 1285, 903 P.2d 826, 827 (1995).

[25]*Id.*

[26]NRS 40.645 (notice requirements); NRS 40.647 (opportunity to inspect and repair the alleged defect); NRS 40.655 (limitations on recovery including attorney fees); *see also Olson v. Richard*, 120 Nev. 240, 243, 89 P.3d 31, 33 (2004).

[27]NRS 40.635(4).

[28]NRS 40.680.

able.''[29] In short, NRS Chapter 40 applies only to ''contractors''[30] who construct ''new residence[s]'' or ''alter[ ] or add[ ] to . . . existing residence[s].''[31] Consequently, we explore the meaning of the terminology ''new or altered residences.''

### Meaning of ''residence''

NRS 40.630 defines '' '[r]esidence' [as] any dwelling in which title to the individual units is transferred to the owners.'' Westpark maintains that, under this definition, the district court correctly determined that it did not construct residences because the units were originally built as apartments. We reject that proposition. Whether or not these units were constructed as apartments or condominium units,[32] the plain wording of NRS 40.630 instructs that the event conferring ''residence'' status on a dwelling is the transfer of title to a home purchaser. Thus, once the 2003 transfers of title occurred, the purchasers of the 108 units, members of the Association, became owners of ''residences'' as that term is defined under NRS 40.630.

### Meaning of ''new'' or ''altered'' residence

Because we determine that the 108 units constructed by Westpark were ''residences'' under NRS 40.630, we must address

---

[29]NRS 40.635(2)-(3).

[30]NRS 40.640 (setting forth liability of ''contractor''), specifically provides,

> In a claim to recover damages resulting from a constructional defect, a contractor is liable for his acts or omissions or the acts or omissions of his agents, employees or subcontractors and is not liable for any damages caused by:
> 1. The acts or omissions of a person other than the contractor or his agent, employee or subcontractor.

[31]NRS 40.615 defines ''constructional defect'' as

> a defect in the design, construction, manufacture, repair or landscaping of a *new residence, of an alteration of or addition to an existing residence, or of an appurtenance* and includes, without limitation, the design, construction, manufacture, repair or landscaping of a new residence, of an alteration of or addition to an existing residence, or of an appurtenance . . . .

(Emphasis added.)

[32]We incidentally note that the district court incorrectly determined that the 108 units were originally constructed as apartments rather than condominium units. NRS 116.027 defines ''condominium'' as ''a common-interest community in which portions of the real estate are designated for separate ownership and the remainder of the real estate is designated for common ownership solely by the owners of those portions.'' While Westpark may have identified the units as ''apartments'' in several loan financing documents related to the project, the buildings were mapped as condominiums, and the building permits and cer-

whether the units were also "new" or "altered" residences for purposes of NRS 40.615's definition of a "constructional defect." Although NRS 40.615 defines a "constructional defect" as a defect in the construction of a "new residence" or a defect in the "alteration of . . . an existing residence," NRS Chapter 40 contains no additional definitions of a "new" or "altered" residence. The Association argues that "new" does not refer to the chronological age of the residence. Rather, because Westpark originally constructed the 108 units and later sold those units to members of the general public, the Association contends that the 108 units were "new residences" for the purposes of NRS 40.615. Westpark argues that the Association's position is incorrect, asserting that because the 108 units were occupied for a substantial period of time before they were sold to the general public, they were no longer "new residences" for the purposes of NRS Chapter 40.

As demonstrated by the parties' arguments, the term "new residence," as used in NRS 40.615, is subject to more than one reasonable interpretation. Because the Legislature has addressed this issue with "imperfect clarity," and the meaning is therefore ambiguous, it is our responsibility to discern the law.[33] As the Association argues, the term "new" is nearly impossible to define in strict chronological terms, as there is little meaningful difference between a unit that sits vacant for a period of several weeks between the completion of construction and sale to a homebuyer and a unit that has been on the market for several months or a year before sale. In addition, the legislative history of NRS Chapter 40 indicates that a primary legislative purpose of enacting the statutory scheme was to protect the rights of homebuyers by providing a process to hold contractors liable for defective original construction or alterations.[34] This purpose is defeated if contractors may escape the provisions of NRS Chapter 40 by building housing units and then waiting to sell the units for a period of time until they are no longer "new." The purposes of NRS Chapter 40 are similarly un-

---

tificates of occupancy identified the units as "new condominiums." As conceded at the oral argument before this court, Westpark was a member of the Association by virtue of its ownership of the units. Therefore, despite Westpark's assertions to the contrary, we conclude that Westpark originally constructed and maintained the units as condominiums that Westpark individually owned and rented to third parties.

[33]*Baron v. District Court*, 95 Nev. 646, 648, 600 P.2d 1192, 1193-94 (1979).

[34]*See* Hearing on S.B. 395 Before Assembly Comm. on the Judiciary, 68th Leg., at 23 (Nev., June 23, 1995) (statement of Valerie Cooney) ("This is an act which creates a legislative expression of the rights and obligations of individuals who contract to build homes and to purchase them. It also creates the procedures to enforce those rights and obligations.").

dermined if contractors could circumvent liability by using units as "model homes" or leasing units to "strawmen" for a period of time before offering them for sale. These potential abuses all lend support to the Association's proposed interpretation that a contractor is subject to liability for constructional defects in a "new residence" under NRS Chapter 40 when it sells a residence that it originally constructed.

Nonetheless, while this court must interpret NRS Chapter 40 "in light of the policy and the spirit of the law," our interpretation must also avoid absurd results.[35] In this case, to hold that condominium units occupied for a period of seven years are "new" clearly conflicts with the common meaning of the term. Thus, we must divine a reasonable interpretation of the term in the context of the language utilized by the Legislature. In light of the spirit and the policy of NRS Chapter 40, we conclude that a residence is "new" when it is a product of original construction that has been unoccupied as a dwelling from the completion of its construction until the point of sale. This definition preserves the legislative purpose of providing homeowners a fairly expansive remedy, as any unoccupied residential dwelling left vacant for a period of time or used as a model home before sale is, in general parlance, still a "new residence" under NRS 40.615. This definition also avoids the absurd result that a unit occupied as a dwelling for several years could still be a "new residence."

Because the 108 units constructed and sold by Westpark were occupied as dwellings for a period of seven years before their sale to the general public, we conclude that these residences were not "new residences" under our interpretation of NRS 40.615 and that the remedies of NRS Chapter 40 do not generally apply to the Association's claims as to those units. That said, NRS 40.615 provides that a constructional defect can also exist "in the design, construction, manufacture, repair or landscaping . . . of an alteration of or addition to an existing residence." Thus, if Westpark altered or repaired the units before their sale to the general public, the Association may still be able to advance some of its claims under the provisions of NRS Chapter 40 if the defects concern the alterations or additions.[36] Accordingly, we conclude that the district court abused its discretion in entering partial summary judgment, as the Association may seek relief under the provisions of NRS Chapter 40 if Westpark altered or repaired the 108 units before sale and the Association's defect claims arose from those alterations. Going further, because the district court's reasoning underpinning

[35]*Hunt v. Warden*, 111 Nev. 1284, 1285, 903 P.2d 826, 827 (1995).

[36]NRS 40.615.

its order of dismissal was not related to the Association's non-Chapter 40 claims for negligence and breach of warranty, the court likewise abused its discretion in granting summary judgment with regard to these claims.

## CONCLUSION

Because title to the 108 condominium units constructed by Westpark transferred to individual purchasers at the time of sale, the units in question here were "residences" for the purposes of NRS Chapter 40. However, as the units were occupied on a rental basis for seven years before sale, we conclude that the units were not "new" under NRS 40.615. Therefore, the remedies of NRS Chapter 40 only apply to the Association's claims if Westpark altered or repaired the units prior to sale and the defects are related to those alterations or repairs.

Accordingly, we conclude that the district court abused its discretion in foreclosing the opportunity to litigate the Association's claims arising from any alterations or repairs to the 108 condominium units, and in foreclosing any of the Association's non-Chapter 40 claims. We therefore grant the Association's petition for a writ of mandamus. We direct the clerk of this court to issue a writ of mandamus directing the district court to: (1) vacate its partial summary judgment order, (2) determine whether Westpark altered or repaired the 108 units before sale and whether any of the Association's defect claims arose from those alterations,[37] and (3) clarify its ruling to state that the Association may still pursue its non-Chapter 40 claims under other common-law and statutory theories.[38]

GIBBONS, HARDESTY, PARRAGUIRRE, DOUGLAS and CHERRY JJ., concur.

---

[37]Because the district court granted summary judgment on the basis that Westpark and Oxbow did not construct "residences" pursuant to NRS 40.630, it did not reach Westpark and Oxbow's claims that provisions in the individual sales agreements for the 108 units constituted a valid waiver of the Association's claims under NRS Chapter 40. If the district court determines that the Association has asserted viable claims pursuant to NRS Chapter 40, we conclude that the alleged contractual waivers are clearly invalid. While NRS 40.640(5) allows a contractor and homebuyer to stipulate to a waiver of any potential claims under NRS Chapter 40, the "waived" constructional defect must be disclosed to the buyer in clear language before the purchase of the residence. Here, the waivers did not disclose any constructional defects; they stated only that certain defects "may" exist and listed a number of potential defects. This vague language was not sufficient to waive any claims pursuant to NRS Chapter 40.

[38]See, e.g., NRS 116.4115 (providing that general "as is" language does not effectively waive implied warranties of quality with respect to residential common-interest units).