OPINION

Per Curiam:

In this appeal, we consider whether an action against a residential designer based on alleged mistakes in his plans drawn to construct a personal residence is subject to the procedural requirements set forth in the provisions of NRS Chapter 40 that pertain to constructional defect actions. We hold that the provisions of NRS Chapter 40 do not apply in this case.

FACTS AND PROCEDURAL HISTORY

Appellants Tory and Patricia Pankopf entered into a contract[1] with respondent Michael Peterson. The parties agreed that Peterson would provide residential design and drawing services for a personal residence, in conformance with the Nevada State Board of Architecture, Interior Design and Residential Design standards. Peterson provided the Pankopfs with blueprints for a personal residence, and they began the excavation process for the residence’s construction. The Pankopfs subsequently halted the excavation process, however, because Peterson’s plans failed to identify the types of trees that would be planted on the site as required by the Pankopfs’ homeowner’s association’s architectural and landscaping committee. According to the Pankoffs, a number of deficiencies in Peterson’s work ultimately prevented them from building their residence.[2]
Consequently, the Pankopfs brought suit against Peterson, alleging that Peterson’s plans contained numerous design defects, mis *45 takes, omissions, and inaccuracies that prevented them from constructing the residence. The Pankopfs’ verified amended complaint alleges causes of action for breach of oral contract, negligence and incompetence, and professional negligence. Peterson subsequently filed a motion to dismiss under NRCP 12(b)(5), arguing that the Pankopfs failed to comply with certain requirements set forth in NRS Chapter 40 that applied in constructional defect cases. The Pankopfs argued that they did not make a claim for relief based on any constructional defect within the scope of NRS Chapter 40.
In its order, the district court ultimately granted Peterson’s motion, concluding that because NRS 40.615 defines a constructional defect as a “defect in the design ... of an alteration of or addition to an existing residence, or of an appurtenance” and NRS 40.605 defines an appurtenance as including “the parcel of real property,” the Pankoffs’ claims fell within NRS Chapter 40’s purview. However, because NRS Chapter 40 requires a claimant to provide the defendant contractor with notice, inspection, and an opportunity to cure and to submit the matter to mediation, the district court dismissed the complaint without prejudice, in order to allow the Pankopfs to proceed in accordance with NRS Chapter 40. The Pankopfs appealed.

DISCUSSION

Standards of review and statutory interpretation

In an appeal from an order granting an NRCP 12(b)(5) motion to dismiss, “[t]he sole issue presented ... is whether a complaint states a claim for relief.”[3] We will construe the pleadings liberally and draw every reasonable inference in favor of the Pankopfs, and we accept all factual recitations in the Pankopfs’ verified amended complaint as true.[4] The motion to dismiss the Pankopfs’ complaint for failure to state a claim should not have been granted “ ‘unless it appeared beyond a doubt that the [Pankopfs] could prove no set of facts [that] . . . would entitle [them] to relief.’ ”[5]
*46 This court reviews questions of statutory interpretation, such as the interpretation of NRS Chapter 40’s provisions, de novo.[6] When the language of a statute is unambiguous, this court should generally not look beyond the statute itself when determining its meaning.[7] However, when the Legislature has addressed a matter with imperfect clarity, it becomes this court’s responsibility to discern the law.[8] This court will resolve any doubt as to the Legislature’s intent in favor of what is reasonable.[9]

Applicability of NRS Chapter 40 to the Pankopf s’ claims

“NRS Chapter 40 provides a comprehensive procedural process for resolving constructional defect disputes between contractors and homeowners, under which a homeowner must provide notice of defects and give the contractor an opportunity to inspect and repair.”[10] In this case, we address whether NRS Chapter 40 applies to completed blueprints for unfinished residences. We conclude that it does not.

Meanings of constructional defect and appurtenance

The district court determined that, based on its interpretation of the terms “constructional defect” and “appurtenance” set forth in NRS Chapter 40, the Pankopfs’ claims fell within the purview of the statute. We disagree. According to NRS 40.615, a constructional defect is defined as
a defect in the design, construction, manufacture, repair or landscaping of a new residence, of an alteration of or addition to an existing residence, or of an appurtenance and includes, without limitation, the design, construction, manufacture, repair or landscaping of a new residence, of an alteration of or addition to an existing residence, or of an appurtenance.
In addition, NRS 40.605(1) defines an appurtenance as “a structure, installation, facility, amenity or other improvement that is appurtenant to or benefits one or more residences, but is not a part *47 of the dwelling unit. The term includes, without limitation, the parcel of real property . . . and amenities associated with or benefiting one or more residences.”
The definition of an appurtenance set forth in NRS 40.605(1) describes an “improvement” that is attached to or “benefits” a residence. While the definition of “appurtenance” includes “the parcel of real property” as the district court noted, the real property must be “associated with or benefiting one or more residences.”[11] Here, because no residence exists, the parcel of real property cannot constitute an appurtenance within the meaning of NRS 40.605. In addition, the Pankopfs primarily complained of mistakes in the Peterson’s plans for their house, not in the design of any appurtenance. Therefore, we conclude that the Pankopfs’ claims do not fall under NRS Chapter 40 based on the plain language of the definitions set forth in NRS 40.615 and NRS 40.605(1).

Meaning of new residence

The second issue presented by the parties is whether NRS Chapter 40 applies to the design of a new residence when the residence has not been built. The Pankopfs assert that because no dwelling exists, NRS Chapter 40 does not apply. Peterson counters that the definition of constructional defect includes “the design ... of a new residence”[12] and the controlling statute does not require a “new residence” to be completed for a constructional defect claim to exist relative to its design. Because Peterson created designs for a new residence, he claims that NRS Chapter 40 applies. We agree with the Pankopfs.
We recently addressed the meaning of the term “new residence” as defined by NRS Chapter 40 in Westpark Owners’ Ass’n v. District Court.[13] Specifically, we held that “a residence is ‘new’ when it is a product of original construction that has been unoccupied as a dwelling from the completion of its construction until the point of sale.”[14] Given that the residence in this case has not been completed, it cannot constitute a “new residence” for the purposes of NRS Chapter 40.[15]

*48
CONCLUSION

We conclude that the Pankopfs did not make ‘ ‘constructional defect” claims for the purposes of NRS 40.615 and NRS 40.605(1). We also conclude that the Pankopfs did not bring suit regarding “new construction” as defined by NRS Chapter 40. Accordingly, NRS Chapter 40 does not apply to the Pankopfs’ claims, and we reverse the order of the district court and remand this case for further proceedings consistent with this opinion.

 In their opening brief, the Pankopfs claim that the contract was written. However, their verified amended complaint states that it was oral.

 Specifically, the Pankopfs claim Peterson failed to provide them with a complete and competent set of architectural plans, failed to perform site layout services, failed to provide cross-sections of various rooms to provide details as to how the residence was to be built, incorrectly designed the foun *45 dation for the basement, failed to provide exterior drainage detail around the footprint of the residence, made numerous errors on dimensions, incorrectly showed the waterline coming from the north side of the property, and provided for an improper septic system.

 Merluzzi v. Larson, 96 Nev. 409, 411, 610 P.2d 739, 741 (1980), overruled on other grounds by Smith v. Clough, 106 Nev. 568, 796 P.2d 592 (1990).

 Vacation Village v. Hitachi America, 110 Nev. 481, 484, 874 P.2d 744, 746 (1994).

 Id. (quoting Edgar v. Wagner, 101 Nev. 226, 228, 699 P.2d 110, 112 (1985)).

 Gallagher v. City of Las Vegas, 114 Nev. 595, 599, 959 P.2d 519, 521 (1998).

 Erwin v. State of Nevada, 111 Nev. 1535, 1538-39, 908 P.2d 1367, 1369 (1995).

 Baron v. District Court, 95 Nev. 646, 648, 600 P.2d 1192, 1193-94 (1979).

 General Motors v. Jackson, 111 Nev. 1026, 1029, 900 P.2d 345, 348 (1995).

 Westpark Owners’ Ass’n v. Dist. Ct., 123 Nev. 349, 167 P.3d 421 (2007).

 NRS 40.605(1).

 NRS 40.615.

 123 Nev. at 360, 167 P.3d at 428-29.

 Id. at 360, 167 P.3d at 429.

 The parties also dispute whether the subsections of NRS 40.615 apply here. However, because the residence in this case does not constitute a “new residence,” neither the portion of NRS 40.615, which defines a constructional defect as a “defect ... of a new residence,” nor its subsections, apply to the instant controversy.