**134 Nev., Advance Opinion 101**

IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHELLE FLORES, AN
INDIVIDUAL,
Appellant,
vs.
LAS VEGAS-CLARK COUNTY
LIBRARY DISTRICT, A POLITICAL
SUBDIVISION OF THE STATE OF
NEVADA,
Respondent.

No. 72462



FILED

DEC 13 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court summary judgment in a declaratory relief action. Eighth Judicial District Court, Clark County; Stefany Miley, Judge.

*Affirmed.*

Iglody Law, PLLC, and Lee Iglody, Las Vegas; Ashcraft & Barr LLP and Jeffrey F. Barr, Las Vegas,
for Appellant.

Bailey Kennedy and Dennis L. Kennedy and Kelly B. Stout, Las Vegas,
for Respondent.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, PARRAGUIRRE, J.:

In 2015, the Legislature enacted Senate Bill 175, which declares that "the regulation . . . of firearms . . . in this State . . . is within the exclusive domain of the Legislature, and any other law, regulation, rule or ordinance to the contrary is null and void." SB 175 §§ 8(1)(b), 9(1)(b) & 10(1)(b), 78th Leg. (Nev. 2015). SB 175 also provides that no *"county," "city,"* or *"town"* may infringe upon the Legislature's domain. *Id.* §§ 8(2), 9(2) & 10(2) (emphases added). In this appeal, we must determine whether SB 175 preempts a library district from banning the possession of firearms on its premises. Because SB 175's plain language expressly pertains to only **counties**, **cities**, or **towns** with respect to firearm regulation, we conclude that library districts are not within the field of governmental entities that the Legislature expressly stated SB 175 would preempt. We therefore affirm the district court's summary judgment in favor of the respondent library district.

*FACTS AND PROCEDURAL HISTORY*

Respondent Las Vegas-Clark County Library District (the District) is a "Consolidated Library District" created under NRS Chapter 379, which permits "[t]he trustees of a county library district . . . and the governing body of any city within that county . . . to establish and maintain a public library [and to] consolidate the city into the county library district." NRS 379.0221. In other words, the District, pursuant to legislative authority, has been jointly created by Clark County and the City of Las Vegas. The District is administered by a board of ten trustees, five of whom

Supreme Court
OF
Nevada

(O) 1947A

are appointed by the Clark County commissioners, and five of whom are appointed by the governing body of the City of Las Vegas. NRS 379.0222(1). The Legislature granted the District a degree of autonomy, which includes "[d]o[ing] all acts necessary for the orderly and efficient management and control of the library," see NRS 379.025(2)(f), and "[e]stablish[ing] bylaws and regulations for the management of the library," see NRS 379.025(1)(h). Clark County and the City of Las Vegas are afforded some element of control over the District, largely in terms of approving the District's budget and financing. See NRS 379.025(1)(f)(2) (approval of budget); NRS 379.0225 (approval of issuance of bonds); NRS 379.0227 (levy of taxes). Under these and other provisions of NRS Chapter 379, the District operates 25 library branches throughout Clark County.

In 2016, appellant Michelle Flores visited the Rainbow Branch Library, which is one of the District's libraries. While there, she was wearing a handgun in a holster on her belt, which both sides acknowledge was being carried openly and not concealed.[1] As Flores was leaving, a librarian asked her not to bring the gun with her the next time she visited the library, explaining that the District had a Dangerous Items Policy (DIP) that prohibited patrons from bringing firearms onto the District's

---

[1]This case does not implicate NRS 202.3673(3), which prohibits *concealed* firearm possession in public buildings such as the Rainbow Branch Library, or NRS 202.265(1), which prohibits *all* firearm possession in certain legislatively designated buildings (not including the Rainbow Branch Library).

Supreme Court
of
Nevada

(O) 1947A

3

premises.[2] In response to this request, Flores filed the underlying declaratory relief action against the District in which she sought a ruling that SB 175 preempts the District from enforcing its DIP.

Both Flores and the District moved for summary judgment based on different provisions in SB 175. Generally speaking, and as explained more fully below, Flores relied primarily on provisions stating that "[t]he regulation of . . . possession . . . of firearms . . . in this State and the ability to define such terms is within the exclusive domain of the Legislature, and any other law, regulation, rule or ordinance to the contrary is null and void." SB 175 §§ 8(1)(b), 9(1)(b) & 10(1)(b). In contrast, the District relied on provisions stating that no "county," "city," or "town" "may infringe upon [the Legislature's right to regulate firearm possession]." *Id.* §§ 8(2), 9(2) & 10(2). Because the District is a "Library District" created under NRS Chapter 379 and not a county, city, or town, the District contended that SB 175 did not prohibit it from enforcing its DIP. Ultimately, the district court agreed with the District and granted summary judgment in its favor. The district court concluded that since the District was a "Library District" as defined in NRS Chapter 379, it was not a "county," "city," or "town" for purposes of SB 175 and that the Legislature had not taken away the District's ability under NRS 379.025(1)(h) to "[e]stablish bylaws and regulations for the management of the library" such as the DIP. This appeal followed.

---

[2]In relevant part, the DIP provides that "[t]he Library District bans bringing or possessing on Library District owned premises any dangerous items, including, without limitation, a deadly or dangerous weapon, loaded or unloaded."

SUPREME COURT
OF
NEVADA

(O) 1947A

4

## DISCUSSION

Whether SB 175 preempts the District's DIP is an issue of statutory construction, which we review de novo.[3] *Williams v. United Parcel Servs.*, 129 Nev. 386, 391, 302 P.3d 1144, 1147 (2013).

To provide context for our analysis of SB 175, it is helpful to first provide an overview of the statutes that SB 175 amended and added to. In 1989, the Legislature enacted Assembly Bill 147, which added one section each to NRS Chapter 244 ("Counties: Government"; section 244.364), NRS Chapter 268 ("Cities and Towns"; section 268.418), and NRS Chapter 269 ("Unincorporated Towns"; section 269.222). By way of example, the added section of NRS Chapter 244 provided:

> Chapter 244 of NRS is hereby amended by adding thereto a new section to read as follows: [ ] Except as otherwise provided by specific statute, *the legislature reserves for itself such rights and powers as are necessary to regulate* the transfer, sale, purchase, *possession*, ownership, transportation, registration and licensing *of firearms* and ammunition in Nevada, *and no county may infringe upon those rights and powers.*

AB 147 § 1(1), 65th Leg. (Nev. 1989) (emphases added). The sections that were added to NRS Chapters 268 and 269 contained identical language, except those sections referred to "no city" and "no town" instead of "no

---

[3]Flores summarily argued in district court that the DIP violates the Nevada Constitution, which provides that "[e]very citizen has the right to keep and bear arms for security and defense, for lawful hunting and recreational use and for other lawful purposes." Nev. Const. art. 1, § 11(1). At oral argument on appeal, she expressly stated that she was abandoning any constitutional arguments, and we therefore confine our analysis to whether SB 175 preempts the District's DIP.

 

county." AB 147 §§ 2(1), 3(1), 65th Leg. (Nev. 1989). As enacted, AB 147 did not apply to already existing ordinances and regulations. *Id.* § 5.

Then in 2015, the Legislature enacted SB 175, which, in addition to expressly repealing AB 147's prospective-only application, *see* SB 175 § 11, 78th Leg. (Nev. 2015), drastically expanded upon the 1989 versions of NRS 244.364, 268.418, and 269.222. By way of example, SB 175 made the following changes to NRS 244.364:

> 1. The Legislature hereby declares that:
>
> (a) ***The purpose of this section is to establish state control over the regulation of and policies concerning firearms***, firearm accessories and ammunition ***to ensure that such regulation and policies are uniform throughout this State*** and to ensure the protection of the right to keep and bear arms, which is recognized by the United States Constitution and the Nevada Constitution.
>
> (b) ***The regulation of*** the transfer, sale, purchase, ***possession***, carrying, ownership, transportation, storage, registration and licensing ***of firearms***, firearm accessories and ammunition ***in this State and the ability to define such terms is within the exclusive domain of the Legislature, and any other law, regulation, rule or ordinance to the contrary is null and void***.
>
> (c) ***This section must be liberally construed to effectuate its purpose.***
>
> 2. Except as otherwise provided by specific statute, ***the Legislature reserves for itself such rights and powers as are necessary to regulate*** the transfer, sale, purchase, ***possession***, carrying, ownership, transportation, storage, registration and licensing ***of firearms***, firearm accessories and ammunition in Nevada and to define such terms.

*No county may infringe upon those rights and powers.*

3. A **board of county commissioners** may proscribe by ordinance or regulation the unsafe discharge of firearms.

4. *Any ordinance or regulation which is inconsistent with this section or which is designed to restrict or prohibit the sale, purchase, transfer, manufacture or display of firearms*, firearm accessories or ammunition that is otherwise lawful under the laws of this State *is null and void*, and any official action taken by an employee or agent of *a county* in violation of this section is void.

5. A **board of county commissioners shall repeal any ordinance or regulation described in subsection 4**, and any such ordinance or regulation that is posted within the county must be removed.

6. A **board of county commissioners** shall cause to be destroyed any ownership records of firearms owned by private persons which are kept or maintained by the county or any county agency, board or commission, including, without limitation, any law enforcement agency, for the purposes of compliance with any ordinance or regulation that is inconsistent with this section. The provisions of this subsection do not apply to the ownership records of firearms purchased and owned by any political subdivision of this State.

7. *Any person who is adversely affected by the enforcement of an ordinance or regulation that violates this section* on or after October 1, 2015, *may file suit* in the appropriate court for declarative and injunctive relief and damages attributable to the violation. Notwithstanding any other provision of law, such a person is entitled to:

(a) Reimbursement of actual damages, reasonable attorney's fees and costs which the person has incurred if, within 30 days after the person commenced the action but before a final determination has been issued by the court, ***the board of county commissioners*** repeals the ordinance or regulation that violates this section.

(b) Liquidated damages in an amount equal to two times the actual damages, reasonable attorney's fees and costs incurred by the person if, more than 30 days after the person commenced the action but before a final determination has been issued by the court, ***the board of county commissioners*** repeals the ordinance or regulation that violates this section.

. . . .

SB 175 § 8(1)-(7), 78th Leg. (Nev. 2015) (emphases added). Sections 9 and 10 of SB 175 contain identical language, except that subsections 2 and 4 refer to "city" or "town" instead of "county" and subsections 3, 5, 6, and 7 refer to "governing body of a city" or "town board" instead of "board of county commissioners." *Id.* §§ 9-10.

As indicated, Flores relies on the language in subsections 1 and 2 stating in broad terms that the purpose of SB 175 is to reserve to the Legislature the exclusive authority to regulate firearm possession. In contrast, the District relies on subsections 2, 4, and 5, which prohibit only counties, cities, or towns from doing anything contrary to SB 175, as well as subsections 3 and 7, which permit a board of county commissioners, governing body of a city, or town board to regulate unsafe firearm discharges and authorize a private right of action against a county, city, or town if any of those entities enforce an ordinance or regulation that violates SB 175.

Having considered these competing positions, we conclude that Flores' reliance on subsections 1 and 2 to the exclusion of the remaining subsections is untenable and that SB 175 unambiguously preempts only counties, cities, and towns from regulating firearm possession. *Orion Portfolio Servs. 2, LLC v. Cty. of Clark ex rel. Univ. Med. Ctr. of S. Nev.*, 126 Nev. 397, 403, 245 P.3d 527, 531 (2010) ("This court has a duty to construe statutes as a whole, so that all provisions are considered together and, to the extent practicable, reconciled and harmonized. In addition, the court will not render any part of the statute meaningless . . . ." (citations omitted)); *Westpark Owners' Ass'n v. Eighth Judicial Dist. Court*, 123 Nev. 349, 357, 167 P.3d 421, 427 (2007) ("When the language of a statute is unambiguous, the courts are not permitted to look beyond the statute itself when determining its meaning.").[4] Certainly, subsections 1 and 2 in sections 8, 9, and 10 of SB 175 announce the Legislature's purpose of occupying the field of firearm regulation. However, subsection 2 in sections 8, 9, and 10 simultaneously defines that field as consisting of only counties, cities, and towns, and subsections 3 through 7 reinforce that definition. In so doing, the Legislature expressly defined the field of governmental entities that it sought to prevent from regulating firearms. *See Mich. Gun Owners, Inc. v. Ann Arbor Pub. Schs.*, 918 N.W.2d 756, 761-62 (Mich. 2018) (concluding that statutes restricting any "city, village, township, or county" from regulating firearm possession did not restrict school districts from regulating firearm possession in light of the legislature having expressly

_____

[4]The dissent urges that our analysis ignores SB 175's legislative history. To be sure, having determined that the statutory language is clear and unambiguous, consideration of the legislative history would be inappropriate here.

SUPREME COURT
OF
NEVADA

(O) 1947A

9

defined the field of local governmental entities that the legislature intended to prohibit regulating firearms); *cf. Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 517 (1992) ("Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted."); *id.* at 547 (Scalia, J., concurring in part and dissenting in part) ("The existence of an express pre-emption provision tends to contradict any inference that Congress intended to occupy a field broader than the statute's express language defines."); *Galloway v. Truesdell*, 83 Nev. 13, 26, 422 P.2d 237, 246 (1967) ("The maxim 'EXPRESSIO UNIUS EST EXCLUSIO ALTERIUS[,'] the expression of one thing is the exclusion of another, has been repeatedly confirmed in this State.").

The Legislature's decision to amend three specific NRS chapters in virtually the identical way belies Flores' argument that the Legislature intended for SB 175 to apply to entities other than counties, cities, and towns. Indeed, if we were to construe SB 175 as Flores is urging and conclude that sections 8(1) and (2) are conclusive as to SB 175's effect, sections 9 and 10 pertaining to cities and towns would be rendered completely meaningless since cities and towns would already be encompassed in section 8.[5] *Orion Portfolio Servs. 2, LLC*, 126 Nev. at 403, 245 P.3d at 531 ("This court has a duty to construe statutes as a whole, so that all provisions are considered together and, to the extent practicable, reconciled and harmonized. In addition, the court will not render any part

_____

[5]We are aware that subsection 1(c) of sections 8, 9, and 10 in SB 175 state that sections 8, 9, and 10 "must be liberally construed to effectuate [the] purpose" of those sections. However, Flores has failed to propose a liberal construction of those sections that does not entail rendering the vast majority of those sections meaningless and superfluous.

of the statute meaningless . . . ." (citations omitted)). Moreover, even within section 8, the repeated references to "county" and "board of county commissioners" would be nonsensical insofar as those subsections would purport to apply to the District, as subsections 5 and 7 would place the responsibility on the board of county commissioners to repeal the DIP and would provide a private right of action against Clark County if the board did not repeal the DIP. Clearly, however, the authority to repeal the DIP rests with the District's trustees.[6] *Id.* ("[This court] will not read the statute's language so as to produce absurd or unreasonable results."). Additionally, if we were to adopt Flores' proffered construction of SB 175, countless other local governmental entities would likewise be prohibited from regulating firearms, including but not limited to tourism improvement districts (*see* NRS 271A.070), miscellaneous cooperative agreements (*see* NRS 277.045), regional transportation commissions (*see* NRS 277A.170), regional housing authorities (*see* NRS 315.7805), general improvement districts (*see* NRS 318.055), county hospital districts (*see* NRS 450.610), county fire protection districts (*see* NRS 474.060), and irrigation districts (*see* NRS 539.043).

We do not necessarily disagree with Flores' argument that Clark County and the City of Las Vegas could not convey authority to the District that they lacked themselves. However, this argument cannot

---

[6]This presupposes that the District's Dangerous Items *Policy* is even an "ordinance or regulation" subject to repeal under subsections 5 and 7, which is an issue that Flores does not address. *Cf. Doe v. Medford Sch. Dist. 549C*, 221 P.3d 787, 793 (Or. Ct. App. 2009) (upholding a school district's no-firearms "policy" when a statute only prohibited "ordinances" regulating firearm possession).

overcome SB 175's unambiguous language, particularly since the Legislature did not contemporaneously revoke the District's authority to "[d]o all acts necessary for the orderly and efficient management and control of the library," NRS 379.025(2)(f), and "[e]stablish bylaws and regulations for the management of the library," NRS 379.025(1)(h). To be very clear, this authority came not from Clark County or the City of Las Vegas but directly from the Legislature.[7] In light of this authority, we decline to construe SB 175's express and repeated references to counties, cities, and towns as impliedly referring to library districts and the multitude of similarly situated local governmental entities.

We are not concluding in this opinion that the Legislature lacks the authority to preempt the District's DIP. We are merely concluding that the Legislature did not do so in SB 175. In this respect, we agree with both Flores and the District that firearm regulation presents a serious issue of public concern that deserves careful consideration by the Legislature. Given the seriousness of this issue, we cannot conclude that the Legislature haphazardly intended to prohibit all local governmental entities from regulating firearms when it specifically amended only the NRS chapters

---

[7]We believe that these statutes are specific enough in their grant of authority to allow the District the discretion to prohibit firearm possession on the District's premises. In this respect, we disagree with Flores' argument that Dillon's Rule prohibits the District from enforcing its DIP. *Cf.* NRS 244.137(3)(b) (recognizing that under Dillon's Rule, a local government can exercise powers that are "necessarily or fairly implied in or incident to the powers expressly granted" by the Legislature). The propriety of the District's discretionary decision is not an issue that needs to be resolved in this appeal.

pertaining to counties, cities, and towns. If the Legislature chooses to prohibit other local governmental entities such as the District from regulating firearms, it can expressly do so by enacting legislation that contains no limiting language. In light of the foregoing, we affirm the district court's summary judgment in favor of the District.

_____, J.
Parraguirre

We concur:

_____, C.J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

SUPREME COURT
OF
NEVADA

(O) 1947A

STIGLICH, J., with whom CHERRY, J., agrees, dissenting:

I respectfully dissent from the majority's opinion. The majority latches on to the fact that Senate Bill 175 (2015) amended only the NRS chapters pertaining to counties, cities, and towns. But in so doing, the majority ignores the expressly stated purpose of the enactment—"*to establish state control* over the regulation of and policies concerning firearms . . . to ensure that *such regulation and policies are uniform* throughout this State and to ensure the protection of the right to keep and bear arms." SB 175 §§ 8(1)(a), 9(1)(a), and 10(1)(a) (emphases added). If this statement of purpose were not clear enough, the Legislature left no doubt as to the intended effect of enacting SB 175 when it declared that: "[t]he regulation of . . . possession . . . of firearms . . . in this State and the ability to define such terms is within the ***exclusive domain*** of the Legislature, and any other law, regulation, rule or ordinance to the contrary is null and void." *Id.* §§ 8(1)(b), 9(1)(b), and 10(1)(b) (emphasis added). I can imagine no stronger statement by the Legislature in expressing its intent to occupy the field of firearm regulation.

Further supporting this plain-language reading of the statutes is section (c) of the amended statutes, which requires the statutes to be liberally construed in favor of effectuating the above-stated purpose. *Id.* §§ 8(1)(c), 9(1)(c), and 10(1)(c). In liberally construing these statutes as they relate to counties, cities, and towns, I find *Wisconsin Carry, Inc. v. City of Madison*, 892 N.W.2d 233 (Wis. 2017), to be instructive. In *Wisconsin Carry*, a transportation commission enacted a rule prohibiting firearms on the commission's buses. 892 N.W.2d at 235-36. A Wisconsin statute provided that "no political subdivision may enact or enforce an ordinance or adopt a resolution that regulates the . . . possession . . . of any . . . firearm,"

and another statute defined "political subdivision" as "a city, village, town or county." *Id.* at 236 & n.6 (quoting Wis. Stat. §§ 66.0409). The rule was challenged, and on appeal, the Wisconsin Supreme Court determined that although the transportation commission was not a city, village, town, or county, it had nevertheless been *created* by the City of Madison. *Id.* at 242. According to the *Wisconsin Carry* court, "[b]ecause a municipality cannot delegate what it does not have, the City is entirely powerless to authorize any of its sub-units to legislate on this subject [of firearms]." *Id.* The *Wisconsin Carry* court therefore held that the transportation commission's firearm prohibition was invalid. *Id.* at 254.[1]

The same reasoning applies here. If the Legislature has prohibited Clark County and the City of Las Vegas from regulating firearm possession, it stands to reason that a sub-entity *created* by those two entities, such as the Las Vegas-Clark County Library District (the District), would similarly not have the authority to regulate firearm possession. Put another way, it seems incongruous that a sub-entity of a county and city could retain power that has been stripped from the creating entities. Thus,

---

[1] It is worth noting that neither *Wisconsin Carry* nor *Michigan Gun Owners, Inc. v. Ann Arbor Public Schools (MGO)*, 918 N.W.2d 756 (Mich. 2018), cited by the majority, appear to have the benefit of express preemption language, a benefit this court clearly has when looking at the plain language of SB 175. *See MGO*, 918 N.W.2d at 760 (recognizing that "a court begins the preemption analysis by determining whether state law expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive" but concluding there was no express preemption at issue) (internal quotation marks omitted)); *Wisconsin Carry*, 892 N.W.2d at 253 (identifying one preemption test as "whether the legislature has expressly withdrawn the power of municipalities to act" and finding that the statute at issue did not mention local government whatsoever and thus that there was no express preemption).

to me, the Legislature's decision to amend only the NRS chapters pertaining to counties, cities, and towns is entirely consistent with its intent to preempt the field of firearm regulation and to uniformly administer firearm policy throughout the state.[2]  In light of the Legislature's unmistakably clear statements, I cannot agree with the majority's conclusion that SB 175's preemptive effect unambiguously pertains only to cities, counties, or towns. At the very least, the above-quoted statements create an ambiguity in SB 175's reach that requires this court to examine SB 175's legislative history. *See Dykema v. Del Webb Cmtys., Inc.*, 132 Nev. 823, 826, 385 P.3d 977, 979 (2016) ("If the statute is ambiguous, meaning that it is capable of two or more reasonable interpretations, this court looks to the provision's legislative history and the context and the spirit of the law or the causes which induced the Legislature to enact it." (internal quotations marks and alterations omitted)).

Here, a review of SB 175's legislative history (which the majority declines to undertake) is telling.  In describing the purpose behind the expanded language in SB 175 sections 8-10, Senator Greg Brower provided the following explanation:

---

[2]I agree with the majority that the Legislature's express preemption in the field of firearm regulation will prohibit some local governmental entities from regulating firearms—I believe that was the Legislature's purpose in exercising exclusive domain over the field.  However, I note that the Legislature, in its quest to instill uniformity, can adopt its own regulations.  *See, e.g.*, NRS 202.265(1)(f) (disallowing the possession of firearms "on the property of the Nevada System of Higher Education, a private or public school or child care facility"); NRS 202.3673(3)(b) (disallowing concealed firearms in "[a] public building that has a metal detector at each public entrance or a sign posted at each public entrance indicating that no firearms are allowed in the building").

Supreme Court
of
Nevada

(O) 1947A

3

Sections 8 through 10 expand and clarify the Legislature's right to regulate firearms, ammunition, and accessories and to define the associated terms. These sections also stipulate that any ordinances or regulations made by political subdivisions of the state that are inconsistent with the Legislature's rights are null and void and must be repealed. ***What this bill seeks to do in those sections is to say the state is going to preempt the field with respect to the regulation of firearms*** for most purposes. As to not allow for inconsistencies between counties, ***the Legislature will make the regulation regarding firearms policy***. The local governments cannot do so in any way that is inconsistent with state law.

Hearing on S.B. 175 Before the Assembly Comm. on Judiciary, 78th Leg., (Nev. April 23, 2015) (emphases added). Senator Brower concluded his explanation by stating, "I will close by stating that our goals are simply these: . . . ***to ensure that our Second Amendment rights are administered in a fair and uniform way across the state***, and to provide a means of redress when that is not the case." *Id.* (emphasis added).

In my view, Senator Brower's comments are a clear indication that the Legislature would have intended to prevent an entity created by both a county and a city from regulating firearm possession if the Legislature had envisioned such a scenario. *Lamb v. Mirin*, 90 Nev. 329, 332, 526 P.2d 80, 82 (1974) ("In determining whether the legislature intended to occupy a particular field to the exclusion of all local regulation, the Court may look to the whole purpose and scope of the legislative scheme."). I therefore respectfully disagree with the majority's conclusion that SB 175 does not preempt the District's DIP. *See N. Nev. Homes, LLC*

*v. GL Constr., Inc.*, 134 Nev., Adv. Op. 60, 422 P.3d 1234, 1236 (2018) ("[I]t is the duty of this court to select the construction [of a statute] that will best give effect to the intent of the legislature." (internal quotation marks omitted)).

In sum, to the extent that SB 175's plain language does not demonstrate the Legislature's intent to occupy the *entire* field of firearm regulation, I believe that SB 175's legislative history clarifies any purported ambiguity. Consistent with this court's duty to construe statutes in a manner that gives effect to the Legislature's intent, I would hold that SB 175 preempts the District's DIP and would reverse the district court's summary judgment in favor of the District. I therefore respectfully dissent.

_____, J.
Stiglich

I concur:

_____, J.
Cherry