EDWARD O. UNDERHILL, MARION L. UNDER-HILL, BYRON DeFORREST UNDERHILL, AND THOMAS H. UNDERHILL, COPARTNERS, DOING BUSINESS UNDER THE FICTITIOUS NAME AND STYLE OF COCA COLA BOTTLING COMPANY, DEFEND-ANTS AND APPELLANTS, v. JOANNE ANCIAUX, A MARRIED WOMAN, PLAINTIFF AND RESPONDENT.

No. 3615

January 30, 1951.                     226 P.2d 794.

*Morse & Graves,* of Las Vegas, for Appellants.

*Lewis, Hawkins & Cannon,* of Las Vegas, for Respondent.

## OPINION

By the Court, MERRILL, J.:

This is an appeal from judgment of the Eighth judicial district court of the State of Nevada in and for the county of Clark, in favor of respondent, plaintiff below, in the sum of $798 plus costs, and from order denying motion for new trial.

The evidence and pleadings disclose the following facts:

Appellants (defendants below) are engaged in the business of manufacturing, bottling and wholesale-selling of Coca Cola. Respondent and her husband, on April 18, 1948, bought a case of Coca Cola at a store which, in turn, bought the beverage exclusively from appellants. Respondent placed a supply of the bottles in her refrigerator.

On April 20 respondent and her husband returned from a ride about nine p. m., passed through their lighted living room into the darkened kitchen, took two bottles of Coca Cola from the refrigerator, opened them, sat at the kitchen table and, by the light from the adjoining room, commenced to drink direct from the

bottles. After two or three large swallows from her bottle, respondent noticed an unnatural taste, became aware of foreign substance in her throat and on her tongue and retched. She turned on the light in the kitchen, went to the sink and, in the presence of her husband, with her fingers and handkerchief removed black, slimy matter from her mouth and scrubbed her tongue. She then became nauseated, ran to the bathroom and vomited. Her husband followed. They returned to the kitchen and, in the light, examined the respondent's bottle, noting foreign matter. The bottle, with its remaining contents, was plugged with a rubber stopper and placed in the refrigerator.

Respondent continued nauseated the remainder of that night and for the following several days and unable to retain anything on her stomach. On the fourth day following the drinking of the beverage, abdominal pains were felt in addition to the continuing nausea. Respondent then consulted a doctor who diagnosed her case as one of gastroenteritis and prescribed suppositories for sedative effect and sulphadiazine to combat the gastroenteritis. Two days later, her condition still unimproved, she was hospitalized for two days upon her doctor's orders and he at that time prescribed penicillin and streptomycin shots, B-complex injection, to build up her appetite and demerol in small doses before meals so that she would retain her food better. It was a matter of three weeks or so before she was able to do any substantial housework. At the time of the trial, months later, she had still not regained her former weight.

The contents of the bottle were never analyzed. Application by appellants for inspection and analysis of the bottle, preceded the trial, but was denied upon respondent's contention, supported by affidavit, that the remaining contents were insufficient in quantity to make an analysis and have sufficient of the contents left for use as an exhibit at the time of the trial.

The case was tried before the court without a jury.

It is now well recognized that manufacturers and bottlers of beverages are liable to consumers for injuries resulting from the fact that the beverage was unfit for human consumption because of the negligence of the manufacturer or bottler. This is true even where the consumer may have purchased from an intermediate dealer and no privity of contract therefore existed between the litigants.

The theory upon which recovery is based is not, however, subject to the same extent of agreement. Most courts rely upon negligence in an extension of the rule applicable to sale of articles inherently dangerous in character. The doctrine of res ipsa loquitur is frequently called upon for assistance in cases where the manufacturing or bottling mechanism was under exclusive control of defendant. Some authorities rely upon breach of implied warranty, although many reject this theory of recovery in absence of privity of contract. Other authorities appear to rely upon a combination of both warranty and negligence without distinguishing clearly between the two.

The extent of authority upon the subject generally and in its many ramifications is overwhelming and no purpose can here be served by an extensive reference. In lieu of further specific citations the following A.L.R. annotations are given: 17 A.L.R. 696; 39 A.L.R. 997; 63 A.L.R. 345; 88 A.L.R. 532; 105 A.L.R. 1507; 111 A.L.R. 1244; 140 A.L.R. 218; 142 A.L.R. 1491.

There can be no question as to the general trend toward granting of recovery. The extreme was, perhaps, reached in a concurring opinion by Traynor, J., in Escola v. Coca Cola Bottling Company of Fresno, 1944, 24 Cal.2d 453, 150 P.2d 436, 440, where he, in substance, advocated absolute liability in the manufacturer. "I concur in the judgment, but I believe the manufacturer's negligence should no longer be singled out as the basis of a plaintiff's right to recover in cases like the present

one. In my opinion it should now be recognized that a manufacturer incurs an absolute liability when an article that he has placed on the market, knowing that it is to be used without inspection, proves to have a defect that causes injury to human beings. * * * Even if there is no negligence, however, public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market."

The case before us, however, does not justify reliance upon such an extreme view. It appears to be one for application of the theory of negligence together with the doctrine of res ipsa loquitur and was so treated in the decision of the lower court.

Appellants first contend that the doctrine of res ipsa loquitur may not apply under the facts of the instant case, where the "sealed package" involved was a bottle whose sealing might have been removed and replaced without detection; that since the record is devoid of any evidence directly showing negligence on the part of appellants, respondent may not recover. As support for this contention appellants rely on the recent case of Jordan v. Coca Cola Bottling Co. of Utah, Utah, 218 P.2d 660, 664, where it is said: "Whereas the almost inescapable conclusion to be drawn from the existence of a deleterious substance in a can which has remained sealed prior to being opened by the ultimate consumer, is that such substance must necessarily have been in the can at the time it was sealed, no such conclusion is required where the sealing is such that it can be removed and replaced without detection. Particularly is this true, where there is shown to be opportunity for tampering. In other words, the only time that the doctrine of res ipsa loquitur should apply to a 'sealed product' in the latter category, is when the plaintiff has shown that there was an absence of opportunity for tampering so that in effect the court could conclude that there was extended control over the product by the manufacturer

until it reached the ultimate consumer, or where the product passes directly from the manufacturer to the consumer without passing through intermediate hands."

Clearly, however, "opportunity for tampering" must be read as "reasonable opportunity." The question remains one of fact.

As was said by the court in Escola v. Coca Cola Bottling Company of Fresno, supra, "It is not necessary, of course, that plaintiff eliminate every remote possibility of injury to the bottle after defendant lost control, and the requirement is satisfied if there is evidence permitting a reasonable inference that it was not accessible to extraneous harmful forces and that it was carefully handled by plaintiff or any third person who may have moved or touched it. * * * If such evidence is presented, the question becomes one for the trier of fact * * *."

In the Jordan case there was greater opportunity for tampering than existed here. As the court there stated the facts: "George Walker, driver of the Coca Cola truck, testifying on cross-examination indicated that at various times when he had been filling the vending machine at the American Smelting and Refining Company plant, men at the plant had come to him with warm bottles of Coca Cola and asked him to exchange them for cold, and that he had made such exchanges, and loaded the warm Coca Colas in the vending machine. Where these warm bottles came from he did not know."

Further, the court points out: "Factories and manufacturing plants where many men are thrown together, are noted for the horseplay and practical joking which there takes place, often with serious results."

In the case at bar the manager of the store from which the bottle was bought was closely examined as to opportunity for tampering. He testified that while the Coca Cola cases were not constantly under his own eye,

they were so stored that at all times they were observable to store employees. On cross-examination he stated that, under the facts, he was positive substitution could not occur. While such an opinion certainly does not compel acceptance, still in conjunction with the factual testimony of the witness it does present evidence from which the court may well have found no reasonable opportunity for tampering to exist.

It is accordingly held that there is evidence which will support the application of the doctrine of res ipsa loquitur and, accordingly, a finding of negligence on the part of appellants.

Appellants next contend that, inasmuch as no analysis was made of the contents of the bottle or of the contents of respondent's stomach or of her stool, there was no direct testimony to the effect that her illness was caused by the drinking of the contents of the bottle and that the basis for the judgment of the lower court was, therefore, pure conjecture and surmise.

It is clear that respondent drank from a bottle of Coca Cola; that foreign matter was contained in the bottle; that she was rendered immediately ill; that her illness became prolonged over a substantial period of time and developed in gravity to a point requiring medical attention, medication and hospitalization. Of these facts there can be no doubt whatsoever. The only link in the factual chain which may be said to be missing, is positive proof through analyses that respondent's illness, not only in its immediate nauseous stage but in its more prolonged stage as well, was caused by harmful qualities of the foreign matter.

It may be granted that in many cases where the foreign matter was imperceptible and cases where, although perceptible, it still was not of a character designed to shock the sensibilities of the consumer, such connection has been required. Under the facts of the case before us, however, no such connection is necessary.

In Medeiros v. Coca Cola Bottling Co. of Turlock, Ltd.,

57 Cal.App.2d 707, 135 P.2d 676, 680, plaintiff drank from a bottle containing a cleaning brush. In allowing recovery the court stated, "Defendant's contention seems to be that however noisome and disgusting a foreign object found in a beverage may be or appear, the manufacturer of such object cannot be held liable for negligence in permitting such object to be in his product unless the contents of the bottle are themselves rendered unfit for human consumption; and that regardless of the effect of the finding of such object in a bottle from which he has drunk, a party cannot recover damages for sickness resulting therefrom, unless he is actually poisoned or otherwise injuriously affected by the drink itself. We think that a court may well take judicial notice that even a normal person in seeing a disgusting looking object in a bottle from which he has just drunk may and often will suffer intense nausea which may produce more serious results. Also one may recover for injury resulting from mental shock in such cases. * * *." To the same effect: Dryden v. Continental Baking Co., 11 Cal.2d 33, 77 P.2d 833; Coca Cola Bottling Co. of Fort Worth v. Burgess, Tex.Civ.App., 195 S.W.2d 379.

The opinion in the Medeiros case reviews other authorities granting recovery notwithstanding absence of proof that the foreign substance present in each case was, in fact, poisonous or chemically harmful. The cases collectively present a most unappetizing assortment of objects including: a metal object having the appearance of a corroded paper clip covered with greenish substance; a decomposed cockroach; a medicated finger bandage of gauze impregnated with some drug; a moldy substance, spongy and soft.

To this legion of distaste the foreign matter in the case at bar might well be added. There can be no question but that it was highly disgusting to the respondent. It is described in the testimony of three witnesses who observed it the evening of its discovery or the following

day: respondent herself, her husband and her next-door neighbor. It is consistently characterized as "slimy." Respondent states, "* * * It was kind of slimy. It was black and it looked like it might have been a bug or something."

The neighbor, with a fine sense of detail stated, "The slime stuck on the bottle; it was a greenish color and it was moving in there."

Clearly the force of impact of the image rendered it a memorable one.

Nor is it necessary here to rely upon judicial notice to establish the possibility of illness under the circumstances. Expert testimony from appellants' own witness, Doctor Hardy, established three causes for gastroenteritis: bacteria contamination, irritation from poison, and psychogenesis. Under cross-examination he explained the last of these included illness caused by force of imagination. The testimony included the following:

"Q. Well if it did taste badly and look sickening and disgusting, could it make a person ill? A. Yes.

"Q. That would be an actual physical illness, wouldn't it? A. Yes."

Under the facts and the law it is held that there was a sufficiency of evidence to justify the determination of the lower court that respondent's illness was the result of her drinking the contents of the bottle.

Appellants next contend that respondent was guilty of contributory negligence in drinking from the bottle after she had noticed that something was in it. The evidence is in conflict as to her awareness of the existence of foreign matter. The absence of direct light in the kitchen would in itself cast considerable doubt. In any event, this was a question of fact for the trial court. Its failure to find contributory negligence will not here be disturbed. Dryden v. Continental Baking Co., supra.

In her complaint respondent asserts not only negligence of appellants but breach of an implied warranty that the Coca Cola was wholesome and fit for immediate human consumption. It is alleged in the complaint and established without dispute that the Coca Cola was purchased with community funds. Appellants contend that under these circumstances respondent's husband was a necessary party plaintiff.

Sec. 8546, N.C.L.1931 Supp., provides in part, "When a married woman is a party, her husband must be joined with her, except * * * When the action concerns her separate property * * *."

This court has held, Fredrickson & Watson Construction Co. v. Boyd, 60 Nev. 117, 102 P.2d 627; Los Angeles & S. L. R.R. v. Umbaugh, 61 Nev. 214, 123 P.2d 224, that the right of a wife to recovery for personal injuries is not a community right but her separate property. Since we are here proceeding on the theory of negligence, we need not consider whether a right to recover damages for breach of warranty would constitute community property. Clearly, the instant case falls within the statutory exception.

Appellants next contend that they were wrongfully precluded from trial by jury. At the time of trial setting, respondent demanded a jury trial. No demand was made by appellants. At the time of the trial, after selection of the jury had commenced, respondent waived her right to a jury trial. Appellants at that time objected to the trial proceeding without a jury. The objection was overruled upon the ground that appellants had waived their right to jury trial. Sec. 8782, N.C.L. 1929, provides in part as follows:

"Trial by jury may be waived by the several parties to an issue of fact in actions arising on contract, or for the recovery of specific real or personal property, with or without damages, and with the assent of the court in other actions, in the manner following:

"1. (a) If a party or his attorney is present at the setting of the cause for trial or has notice thereof, then by failing to demand a trial by jury at or before such setting."

Appellants contend that once a jury has been demanded by either party it may not be dispensed with save by consent of all parties. In support, appellants cite Sherwood v. N. Y. Telephone Co., 46 Misc. 102, 91 N.Y.S. 387; Przybyla v. Chain Belt Co., 1914, 157 Wis. 216, 147 N.W. 31; State v. Rosecliff Realty Co., 1948, 1 N.J. Super. 94, 62 A.2d 488; Stukey v. Stephens, 1931, 37 Ariz. 514, 295 P. 973. These cases, however, all deal with a situation where the nondemanding parties in failing to make demand of their own, relied (or might be assumed to have relied) upon the demand made by the opposing party. Such is not the case here.

The record here shows that, at the time of trial setting, the court inquired of counsel for appellants whether a jury was desired and was answered in the negative. Appellants clearly did not rely upon respondent's demand. Their waiver was express and not merely tacit.

The law of this state is clear that the statutory provisions relative to waiver of jury trial are constitutional and that it is properly within the discretion of the trial court to refuse to set aside a waiver. Kohlsaat v. Kohlsaat, 62 Nev. 485, 155 P.2d 474; De Remer v. Anderson, 41 Nev. 287, 288, 169 P. 737, 25 A.L.R. 775; O'Banion v. Simpson, 44 Nev. 188, 191 P. 1083.

The trial court, accordingly, was not in error.

Appellants next contend that while the trial court did file a written decision, this decision did not constitute findings of fact; that accordingly no findings of fact were made; that findings were not waived; that failure to make findings constituted reversible error.

Secs. 8783 and 8784, N.C.L.1931 Supp., deal with the requirement for findings of fact:

Sec. 8783. "Upon a trial of a question of fact by the

court, its decision must be given within thirty days after the cause is submitted for decision."

Sec. 8784. "Findings of fact may be waived by the several parties to an issue of fact.

"1. By failing to appear at the trial.

"2. By consent in writing, filed with the clerk.

"3. By oral consent, in open court, entered in the minutes.

"In all cases where the court directs a party to prepare findings, a copy of said proposed findings shall be served upon all the parties who have appeared in the action at least five days before findings shall be signed by the court, and the court shall not sign any findings therein prior to the expiration of such five days.

"The court may, however, at any time before said findings are signed, add to or modify the findings in any respect so as to make the same conform to the issues presented by the pleadings and to the evidence adduced at the trial. No such additions to, or modifications of, the findings shall be made unless a notice in writing specifying generally the additions or modifications desired shall have been served on the adverse party or his attorney of record."

The record shows that on hearing of appellants' motion for new trial, their counsel orally objected to lack of findings of fact. The record does not disclose that any application for specific findings ever was made. Sec. 9385.65, N.C.L.1931 Supp., provides: "In cases tried by the court, without a jury, no judgment shall be reversed for want of a finding, or for a defective finding of the facts, unless exceptions be made in the court below to the finding or to the want of a finding after application to the court for additions to or modification of the findings with notice given to the adverse party as prescribed in * * * section 8784 Nevada Compiled Laws 1929, volume 4, approved February 20, 1931. Upon failure of the court on such application to remedy the alleged error, the party moving shall be entitled to his exceptions."

In the absence of application and written notice as is provided, the mere, objection to the lower court, even when made in writing, is insufficient to support an exception. Richards v. Steele, 60 Nev. 66, 99 P.2d 641, 100 P.2d 72.

While the procedural provisions of sec. 8784 appear to apply to those cases where the court has directed party preparation of findings, the broad language of sec. 9385.65 clearly directs that such procedure must likewise be followed in cases where there is a complete lack of formal findings. Accordingly, want of findings may not here be asserted.

Finally appellants contend that respondent's counsel was guilty of misconduct in propounding certain questions to a witness over rulings of the court. The questions were as follows: "Mr. Underhill, during any of the period of time after April 1, 1948 and before November 1, 1948, were you ever notified that a bottle of Coca Cola sold to Lucey's Restaurant here had a cigar butt in one of the bottles?"

An objection to this question was sustained. Counsel then asked: "Mr. Underhill, I will ask you whether or not at any time after April 1, 1948, you were notified by the Tower Club of North Las Vegas that they had found foreign substances in one of your bottles?" Objection to this question, likewise, was sustained.

This being a case before the court without a jury, we must, in the absence of any indication to the contrary, indulge in the presumption that the trial court, in proper performance of its duties, disregarded any inference which might have been drawn from the questions. There was no indication from the court's decision that it was, in the slightest, affected by any such inference.

The judgment and order denying new trial are affirmed with costs.

BADT, C. J., and EATHER, J., concur.