LEWIS G. LONG, APPELLANT, *v.* FLANIGAN WARE-HOUSE COMPANY AND INLAND LADDER CO., A CORPORATION, RESPONDENTS.

No. 4583

May 22, 1963                                    382 P.2d 399

*Nada Novakovich,* of Reno, for Appellant.

*Leslie A. Leggett,* of Reno, for Respondent Flanigan Warehouse Company.

*Vargas, Dillon & Bartlett* and *Alex. A. Garroway,* of Reno, for Respondent Inland Ladder Co.

**OPINION**

By the Court, Thompson, J.:

The plaintiff (Long) brought suit for damages against the retailer (Flanigan Warehouse Company) and the manufacturer (Inland Ladder Co.) of a wooden ladder. The retailer ordered the ladder from the manufacturer on January 22, 1960. It was delivered to the retailer's warehouse on January 26, 1960. On February 1, 1960 the retailer sold the ladder to a painting contractor (Solvas). It was used occasionally thereafter. The plaintiff, a painter employed by Solvas, claims that on August 12, 1960, a leg of the ladder split and collapsed because of defective construction; that he was standing on the fourth step of the ladder when its left rear leg collapsed; and that he fell to the floor and was injured.

The plaintiff's claim for relief against each defendant is two-fold: breach of the implied warranties of quality, fitness for a particular purpose (NRS 96.240(1)) and merchantability (NRS 96.240(2)), and negligence. The

case was presented to a jury. At the close of the plaintiff's case in chief, each defendant moved for involuntary dismissal. NRCP 41(b). The motion of the retailer was granted. As to it, the district court ruled that the lack of privity barred liability on the implied warranty theory. Regarding the negligence claim, that court concluded that the law does not impose a duty upon the retailer to inspect or test the ladder for latent defects. Accordingly, its failure to do so did not result in a breach of duty giving rise to a cause of action in the plaintiff based on negligence.

The manufacturer's motion to dismiss was also granted as to the implied warranty count, and for the same reason, lack of privity. However, its motion was denied as to the negligence claim, and the case proceeded against the manufacturer on that theory alone. The jury returned its verdict for the manufacturer. From the judgments entered the plaintiff appeals.

The assigned errors require our determination of the following questions: 1. Does the user of a chattel have a claim for relief against a retailer or the manufacturer, or both, based upon a breach of the implied warranties of quality, absent a contractual relationship (privity)? 2. Should the concept of strict liability (liability without fault), which issue was not presented to the trial court, apply to the claim of a user of a chattel against either the retailer or the manufacturer?[1] 3. Does the retailer of a chattel have the duty to inspect or test it for latent defects? 4. Were certain questions (to later be specified) asked by plaintiff's counsel of an adverse witness during the plaintiff's case in chief, to which objections were sustained, relevant or material to the issues raised in the case against the manufacturer?

---

[1]After the judgment was entered in the present case, the Supreme Court of California approved and applied the strict liability doctrine against the manufacturer of the product. Greenman v. Yuba Power Products, Inc., 27 Cal.Rptr. 697, 377 P.2d 897. Plaintiff-appellant asks us to apply it to this case.

The questions relating to the implied warranties of quality as a predicate for the retailer's and manufacturer's liability to one not in privity, are of first impression in Nevada. The lack of privity as a defense has been asserted by counsel and rejected by this court in two cases, Underhill v. Anciaux, 68 Nev. 69, 226 P.2d 794 (foreign substance in Coca Cola bottle), and Cosgriff Neon Sign Co. v. Mattheus, 78 Nev. 281, 371 P.2d 819 (collapsing brick pylon). However, in each instance, liability was based on negligence. Implied warranty as a predicate for liability was not involved in Cosgriff, while in Underhill though it was pleaded the point was not decided.[2] Clearly the absence of contractual privity is not a defense for one whose liability rests in tort. For this reason the asserted defense was rejected in Cosgriff and Underhill. We must now decide whether such want of privity is a defense to a claim for relief based upon a breach of the implied warranties of quality.

1. In Nevada the implied warranties of quality on the sale of goods are governed by the Uniform Sales Act. They are two: (a) a warranty that the goods are reasonably fit for the particular purpose of the buyer, when he makes that purpose known to the seller and it appears that he relies on the seller's skill or judgment, NRS 96.240(1) (see Kirk v. Stineway Drug Store Co., 38 Ill.App.2d 415, 187 N.E.2d 307, for an excellent discussion as to the proof of the seller's representation and the buyer's reliance); (b) a warranty of merchantable quality, when goods are bought by description from one who deals in goods of that description, NRS 96.240(2). No warranty is to be implied unless the case falls within one of the two mentioned categories. The present case

---

[2]In Underhill, supra, the court stated, inter alia: "It appears to be one for the application of the theory of negligence, together with the doctrine of res ipsa loquitur, and was so treated in the decision of the lower court."

does not involve the warranty of merchantable quality. A sale by description does not occur when the goods are present and there is an opportunity to inspect. Adams v. Peter Tramontin Motor Sales, Inc., 42 N.J. Super. 313, 126 A.2d 358; Grass v. Steinberg, 331 Ill. App. 378, 73 N.E.2d 331.

Though the implied warranty of fitness for a particular purpose might be a predicate for recovery against the retailer, had the plaintiff himself purchased the ladder, Kirk v. Stineway Drug Store Co., supra, it is not here an available remedy, because the ladder was purchased by plaintiff's employer. The terms "seller" and "buyer," are defined by the act, NRS 96.020. Those definitions appear to have been drawn with the immediate parties to the sale (or their legal successors in interest) in mind. The buyer's employee is not embraced by the statutory definition. Where the parties to the lawsuit are not the immediate buyer and seller the weight of authority is that such lack of contractual privity will bar recovery on an implied warranty theory. 75 A.L.R. 2d 39; Prosser, Torts (2d ed.), p. 510. The Uniform Sales Act places many additional obstacles in the path of liability in the case before us. The most eminent scholar in this field of law, William L. Prosser, discusses them, 69 Yale L.J. 1009, at 1124 et seq., and concludes: "What all this adds up to is that 'warranty,' as a device for the justification of strict liability to the consumer, carries far too much luggage in the way of undesirable complications, and is leading us down a very thorny path. The courts which quote, in nearly every other case, the statement that 'the remedies of injured consumers ought not to be made to depend upon the intricacies of the law of sales,' have proceeded to entangle themselves in precisely those intricacies like Laocoön and his sons. All this is pernicious and entirely unnecessary. No one doubts that, unless there is privity, liability to the consumer must be in tort and not in contract. There is no need to borrow a concept from the contract law of sales;

and it is 'only by some violent pounding and twisting' that 'warranty' can be made to serve the purpose at all. Why talk of it? If there is to be strict liability in tort, let there be strict liability in tort, declared outright, without an illusory contract mask."

However, some recent decisions have declared that lack of privity is not a defense to a claim based upon breach of implied warranty. Spence v. Three Rivers Builders & Masonry Supply, Inc., 353 Mich. 120, 90 N.W.2d 873; Continental Copper & Steel Industries v. "Red" Cornelius, 104 S.2d 40 (Fla.App. 1958); B. F. Goodrich v. Hammond, 10 Cir., 269 F.2d 501; Jarnot v. Ford Motor Co., 191 Pa.Super. 422, 156 A.2d 568; dictum, Beck v. Spindler, 256 Minn. 543, 99 N.W.2d 670; Henningsen v. Bloomfield Motors, 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1. We decline to follow their reasoning. Clarity in our law will not be served by applying the Uniform Sales Act to parties for whom its provisions were not designed. If liability is to be placed upon either the retailer or the manufacturer, it must rest upon (a) his negligence, or (b) upon a declared public policy that one who sells a product in a condition dangerous for use shall be strictly liable to its ultimate user for injuries resulting from such use, although the seller has exercised all reasonable care and the user has entered into no contractual relation with him (liability without fault). We therefore hold that, as a matter of law, the district court properly granted the motions for the involuntary dismissal of the claims asserting a breach of the implied warranties of quality.

2. We turn next to discuss briefly the concept of strict liability in tort. In Greenman v. Yuba Power Products, Inc., 27 Cal.Rptr. 697, 377 P.2d 897, Justice Traynor, writing for a unanimous court, discarded the shackles of contract warranties and candidly declared that, "A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have

a defect that causes injury to a human being." California has thus judicially declared its public policy. As previously mentioned, Greenman was handed down after judgment was entered in the present case. On this appeal, plaintiff-appellant has asked us to follow it.

In Greenman plaintiff won his case against the manufacturer in the trial court. Thus, the posture of that case on appeal would permit the Supreme Court to affirm the judgment, but upon a new and different theory than was presented below. Here, however, the plaintiff lost his case against the manufacturer. We are asked, on the basis of Greenman (which had not then been decided), to declare that the trial court erred in failing to conduct the trial on a theory not advanced by counsel nor at that time declared by any court to be the law. The issue of strict liability in tort was not presented. We decline to predicate error upon the inability of a trial court to foresee a new development in product liability law. When that issue (strict liability) is presented to a trial court, a ruling made, and an appeal taken, we shall then decide the matter. In this connection the words of Justice Harlan, dissenting, in Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, are particularly appropriate: "I seriously doubt the wisdom of these 'guideline' decisions. They suffer the dangers of pitfalls that usually go with judging in a vacuum. However carefully written, they are apt in their application to carry unintended consequences which once accomplished are not always easy to repair. Rules respecting matters daily arising in the federal courts are ultimately likely to find more solid formulation if left to focused adjudication on a case-by-case basis, * * *, rather than to *ex cathedra* pronouncements by this Court, which is remote from the

arena. In dealing with cases of this type, I think we do better to confine ourselves to the particular issues presented. * * *"[3]

3. Did error occur when the trial court ruled, as a matter of law, that the retailer was not negligent, and granted its motion to dismiss the plaintiff's claim based on negligence? We think not. Though every favorable factual intendment is to be accorded the plaintiff, in ruling on a 41(b) involuntary dismissal motion, Corn v. French, 71 Nev. 280, 289 P.2d 173; Gordon v. Cal-Neva Lodge, Inc., 71 Nev. 336, 291 P.2d 1054; Gunlock v. New Frontier Hotel Corp., 78 Nev. 182, 370 P.2d 682, the narrow question here posed is one of law. The facts are not in dispute. The retailer received the ladder on January 26, 1960. It was examined for transit damage. None was found. It was placed in the warehouse. Six days later it was sold to plaintiff's employer. The defect, if one existed, was latent. The retailer did not inspect or test for the claimed latent defect. The sole question is whether it was under a legal duty to do so. We agree with the trial court that it was not. Burgess v. Montgomery Ward, 10 Cir., 264 F.2d 495; Turner v. Central Hardware Co., 353 Mo. 1182, 186 S.W.2d 603, 158 A.L.R. 1402; Restatement, Torts § 402 (Supp.1948). Cf. Cosgriff Neon Sign Co. v. Mattheus, 78 Nev. 281, 371 P.2d 819. Absent a breach of duty, a liability based on negligence does not exist.

---

[3]The problems posed by strict liability in tort are manifold—what parties are to be strictly liable—the manufacturer, the retailer, the wholesaler? To what products should the doctrine apply, if to be applied at all—food, drink, inherently dangerous items, standardized merchandise? What defenses are available, if any at all? The Prosser article, 69 Yale L.J. 1100–1148 is penetrating and helpful. Of interest also is NRS 14.080, providing for the service of process on foreign manufacturers, producers and suppliers.

4. An officer of the manufacturer was called by plaintiff's counsel as an adverse witness during presentation of the plaintiff's case in chief. The court sustained the objections of irrelevancy and immateriality made by counsel for the manufacturer to a series of questions about the manufacturer's advertising brochures; also to the question whether the ladder was warranted or guaranteed to be safe. Its ruling is asserted as error. We have already held, as a matter of law, that the plaintiff does not have a claim for relief based upon an asserted breach of the implied warranties of quality. Hence, the questions are not relevant or material to that theory of recovery because it does not exist. Nor do we deem the questions relevant or material to the charge that the manufacturer was negligent. To recover on that theory of liability the plaintiff had to offer probative evidence to show (a) a defect in the ladder; (b) that it was in existence when the ladder left the possession of the manufacturer; and (c) that the defect came about as the result of the failure of the manufacturer to use ordinary care. As to (c) the doctrine of res ipsa loquitur is an aid. Cf. Underhill v. Anciaux, 68 Nev. 69, 226 P.2d 794. In addition, proximate cause must be shown, that is, that the defect claimed caused the injury. The questions asked do not tend to prove any of those facts. The trial court ruled correctly.

Affirmed.

BADT, C. J., and MCNAMEE, J., concur.