# IN THE SUPREME COURT OF THE STATE OF NEVADA

THE REGENT AT TOWN CENTRE
HOMEOWNERS' ASSOCIATION, A
NEVADA NON-PROFIT
CORPORATION,
Appellant,
vs.
OXBOW CONSTRUCTION, LLC, A
NEVADA LIMITED LIABILITY
COMPANY,
Respondent.

No. 69777



FILED

MAY 2 4 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

THE REGENT AT TOWN CENTRE
HOMEOWNERS' ASSOCIATION, A
NEVADA NON-PROFIT
CORPORATION,
Appellant,
vs.
OXBOW CONSTRUCTION, LLC, A
NEVADA LIMITED LIABILITY
COMPANY,
Respondent.

No. 70296

## *ORDER AFFIRMING IN PART, REVERSING IN PART AND REMANDING*

These are consolidated appeals from a district court grant of summary judgment and post-judgment award of costs in a construction defect action between a homeowners' association and the general contractor of the property. Eighth Judicial District Court, Clark County; Jerry A. Wiese, Judge.

Appellant, The Regent at Town Centre Homeowners' Association (Association), brought claims against respondent Oxbow

Construction LLC for breach of express warranty, breach of implied warranty, and negligence relating to the construction of The Regent at Town Centre (Town Centre). Oxbow argued, and the district court agreed, that no warranties existed between Oxbow and the Association and that various agreements waived the Association's claims. As such, the district court granted summary judgment in favor of Oxbow, and awarded Oxbow costs and expert witness fees. We reverse the district court's grant of summary judgment on the Association's negligence claim and the award of costs and expert fees, affirm summary judgment on the Association's breach of express warranty and breach of implied warranty claims, and remand for further proceedings consistent with this order.

We review a grant of summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is appropriate if the pleadings and other evidence on file, viewed in the light most favorable to the nonmoving party, demonstrate that no genuine issue of material fact remains in dispute and that the moving party is entitled to judgment as a matter of law. *Id.* Further, we review "questions of statutory interpretation, such as interpretation of NRS Chapter 40, de novo." *Westpark Owners' Ass'n v. Eighth Judicial Dist. Court*, 123 Nev. 349, 357, 167 P.3d 421, 426-27 (2007).

*Negligence*

The Association brought a negligence claim under NRS Chapter 40, which recognizes liability for general contractors who are responsible for construction defects in a new residence. *See* NRS 40.640. In *Oxbow Construction, LLC v. Eighth Judicial District Court*, 130 Nev., Adv. Op. 86, 335 P.3d 1234, 1242 (2014) (*Oxbow I*), this court recognized that the Association can pursue a construction defect claim for negligence on behalf of itself and individual unit owners for "construction defects in limited

common elements assigned to multiple units in a common building, [as long as] the building in question contains at least one unit that is a 'new residence.'"

However, under NRS 40.640(5), a construction defect claim is waived if the defect was disclosed prior to the owner's purchase of the property and "the disclosure was provided in language that is understandable and was written in underlined and boldfaced type with capital letters." A disclaimer that uses vague language or merely states "that certain defects 'may' exist and list[s] a number of potential defects" is not a valid disclosure. *Westpark Owners' Association*, 123 Nev. at 361 n.37, 167 P.3d at 429 n.37.

Here, there are three agreements that purport to disclaim Oxbow's liability and/or waive the Association's claim: (1) the purchase and sale agreement between El Capitan and Regent II; (2) the individual purchase and sale agreements between Regent II and individual unit owners; and (3) the Declaration of Covenants, Conditions, and Restrictions (CC&Rs) for Town Centre. The individual purchase agreements and the CC&Rs reference and incorporate the Swainston Report and its list of defects.

We need not address whether the purchase and sale agreement between El Capitan and Regent II is binding on the Association, as it does not meet the requirements for waiver under NRS 40.640(5). The purchase and sale agreement between El Capitan and Regent II is in regular typeface, and uses general language rather than specifically disclosing any defects at Town Centre. Similarly, the individual purchase agreements between Regent II and the individual unit owners do not meet the content requirement of NRS 40.640(5). Although the individual purchase

agreements purport to disclose the "Current Conditions of Property" that "may include, but are not limited to such conditions as" and then lists a variety of defects, this language is nearly identical to a disclaimer previously held insufficient under NRS Chapter 40. *See Westpark*, 123 Nev. at 361 n.37, 167 P.3d at 429 n.37 ("Here, the waivers did not disclose any constructional defects; they stated only that certain defects 'may' exist and listed a number of potential defects. This vague language was not sufficient to waive any claims pursuant to NRS Chapter 40."). Therefore, the purchase and sale agreement for Town Centre, as well as the individual unit owner's purchase agreements,[1] do not meet NRS 40.640(5)'s requirements and cannot waive the Association's negligence claim under NRS Chapter 40.

Conversely, the limitations in the CC&Rs for Town Centre do bind the Association. *See Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1221 (Cal. 2012) (holding that an arbitration clause in CC&Rs was binding on the homeowners' association, even though the association did not exist as an independent entity when the CC&Rs were drafted and recorded); *see also* NRS 116.2105(2) ("The declaration may contain any other matters the declarant considers appropriate."). Oxbow, as a third-party beneficiary of the CC&Rs, has standing to enforce any waivers included in the CC&Rs. *See* 20 Am. Jur. 2d *Covenants, Conditions*

---

[1]The disclaimer in the main text of the individual purchase agreements is invalid under NRS 40.640(5). However, the individual purchase agreements incorporate the Swainston Report through an addendum, which does adequately disclaim various defects at Town Centre. But, because the Association has represented that it is not bringing claims on behalf of individual unit owners for defects in individual units, the CC&Rs' incorporation of the Swainston Report is more applicable to the Association's claims in this case.

*& Restrictions* § 46 (2015) ("[N]onparties to a transaction may nevertheless be the intended beneficiary of a covenant and thereby gain standing to enforce it.") (footnote omitted). And although the CC&Rs do not include a disclosure of specific defects, they do incorporate the Swainston Report by reference. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2nd Cir. 1996) ("[A] paper referred to in a written instrument and sufficiently described may be made a part of the instrument as if incorporated into the body of it.") (quoting *Jones v. Cunard S.S. Co.*, 263 N.Y.S. 769, 771 (App. Div. 1933)).

El Capitan and Regent II enlisted the Swainston Consulting Group to do an analysis of Town Centre for construction defects, and Swainston issued a report concluding that there were various defects and violations at the property. The Swainston Report was issued prior to Regent II's purchase of Town Centre, and before the creation of the Association through the CC&Rs. The Swainston Report affirmatively concludes that there are various defects at Town Centre:

> The Regent at Town Cent[re] project was designed and constructed as an apartment project in general conformance with the standard of the industry that was in place at the time of original construction. Many technical deviations exist between the as-built condition and the requirements of the building codes and other applicable standards. While these deviations typically represent technical defects some of them are relatively minor in nature. Other deviations will require remedial measures and, as maintenance continues to be deferred, the impact of these deviations will increase accordingly.

(original in underlined typeface).

This conclusion, in conjunction with 21 pages detailing the defects at Town Centre in bold, all capital, underlined typeface,

SUPREME COURT
OF
NEVADA

(O) 1947A

5

distinguishes the Swainston Report from the conditional language that is inadequate under *Westpark*, and notified the Association that specific construction defects existed at Town Centre. Further, the Association's claims are for defects in the limited common areas of Town Centre, as opposed to claims regarding individual units on behalf of individual unit owners. Therefore, the general language in the Swainston Report—that the list includes defects common to the project as a whole—does not necessarily prevent disclosure of defects in limited common areas; that is, while a list of defects common to the project as a whole would not disclose defects in individual units, it may include defects in common elements or limited common elements. However, the actual overlap between the defects for which the Association brings claims and the disclaimers in the Swainston Report is not clear on the record or briefing before us.

We reject Oxbow's contention, and the district court's determination, that the various agreements in this case provide a complete disclaimer for any negligence by Oxbow in the construction of Town Centre. NRS 40.640(5) provides for no such blanket disclaimer, but instead requires that each defect be disclosed in understandable language prior to the purchase of the new residence. The record requires further development to determine the specific defects in the limited common areas for which the Association brings its negligence claim. To the extent any of the alleged defects not mentioned in the Swainston Report is in a limited common area assigned to a new residence, summary judgment was not appropriate. Similarly, to the extent a defect listed in the Swainston Report was too vague or equivocal to disclose the particular defect, summary judgment was not appropriate on the Association's negligence claim for construction

defect. On the record and briefing before us, we are unable to make such determinations.

As there is a genuine dispute of material fact as to whether the Swainston Report discloses each defect for which the Association makes a claim, we remand this case to the district court for further proceedings to determine the specific defects for which the Association brings claims, and which of those are waived by adequate disclosure in the Swainston Report.

*Expert witness fees*

The district court awarded $40,274.47 in litigation costs, plus $103,067 in expert witness fees, to Oxbow as the prevailing party below. As we reverse summary judgment on the Association's claim for negligence, we also reverse the award of costs and expert witness fees. *See Bayerische Motoren Werke Aktiengesellschaft v. Roth*, 127 Nev. 122, 142, 252 P.3d 649, 662 (2011).

*Breach of express warranty*

The district court appropriately determined that there was no contractual privity between Oxbow and the Association that would create an express warranty. In addition, no express warranties were created or transferred under NRS Chapter 116.

NRS 116.4113 sets forth the ways in which an express warranty can be created between a seller and a purchaser, and then transferred to subsequent purchasers. *See* NRS 116.4113 ("Express warranties made by any seller to a purchaser of a unit, if relied upon by the purchaser, are created as follows . . . ."). The plain language of NRS 116.4113 requires that the creation of an express warranty be made by a seller to a purchaser. *See Westpark*, 123 Nev. at 357, 167 P.3d at 427 ("When the language of a statute is unambiguous, the courts are not permitted to look beyond the statute itself when determining its meaning."). Because Oxbow was the general

contractor of Town Centre, and never its seller, the district court correctly determined that no express warranties were created by Oxbow under NRS 116.4113.

The Association argues that, under NRS Chapter 116, an affiliate is responsible for the express warranties made by the declarant of a common-interest community, and, therefore, Oxbow is liable for express warranties made by El Capitan Associates to the Association. As support for this assertion, the Association cites to NRS 116.3104(2)(b). But this statutory provision does not support the Association's argument, because NRS 116.3104(2)(b) only holds affiliates jointly liable for a declarant's obligations if the affiliate succeeds in interest to the special declarant's rights. Here, the parties dispute whether and to what extent El Capitan and Oxbow have overlapping members and control of one another such that Oxbow is the affiliate of El Capitan, but it is undisputed that Oxbow did not succeed to any special declarant's rights involving Town Centre. As a result, NRS 116.3104(2)(b) will not extend liability to Oxbow for express warranties that were made by El Capitan in the development of Town Centre. We also reject the Association's general contention that the affiliate of a declarant is liable for express warranties made by the declarant under NRS Chapter 116. Therefore, the dispute regarding Oxbow's affiliate status is not material to the outcome of the claim for breach of express warranty, because the Association's interpretation of NRS Chapter 116 is incorrect as a matter of law. Accordingly, we affirm summary judgment on the Association's claim for breach of express warranty.

*Breach of implied warranty*

The Association's breach of implied warranty claim fails for similar reasons. NRS 116.4114 provides that any declarant or dealer impliedly warrants that a residence will be free from construction defects.

*See* NRS 116.033 (A dealer is "a person in the business of selling units for his or her own account"). But, again, Oxbow was the general contractor of Town Centre; Oxbow was never a dealer or declarant, and never succeeded to any special declarant rights. The district court also properly determined there was no privity of contract between the Association and Oxbow. *See Long v. Flanigan Warehouse Co. & Inland Ladder Co.*, 79 Nev. 241, 246, 382 P.2d 399, 402 (1963) ("Where the parties to the law suit are not the immediate buyer and seller the weight of authority is that such lack of contractual privity will bar recovery on an implied warranty theory.") As such, the Association has no viable theory of breach of implied warranty by Oxbow, and we therefore affirm summary judgment on the Association's breach of implied warranty claim.

*Summary judgment without further discovery*

We also reject the Association's argument that the district court exceeded its authority by granting summary judgment without further discovery, even though a previous judge determined that further discovery was needed to resolve Oxbow's affiliate status.

Generally, a district court judge's decision in a case becomes the "law of the case" and cannot be overruled by a coequal, successor judge. *See Sittner v. Big Horn Tar Sands & Oil, Inc.*, 692 P.2d 735, 736 (Utah 1984) ("[T]he doctrine of 'law of the case' has evolved to avoid the delays and difficulties that arise when one judge is presented with an issue identical to one which has already been passed upon by a coordinate judge in the same case"); *see also Messenger v. Anderson*, 225 U.S. 436, 444 (1912) (explaining that "law of the case" "merely expresses the practice of courts generally to refuse to reopen what has been decided"). Adherence to the law-of-the-case is a doctrine of self-restraint, however, and not a jurisdictional limitation. *See Moore v. City of Las Vegas*, 92 Nev. 402, 405, 551 P.2d 244, 246 (1976)

(reviewing a judge's reconsideration of a prior judge's ruling in the same case for abuse of discretion); *Harvey's Wagon Wheel, Inc. v. MacSween*, 96 Nev. 215, 217-18, 606 P.2d 1095, 1096-97 (1980) (upholding a district court's grant of summary judgment after a previous denial of the same motion when the judge became more familiar with the case and was persuaded by newly cited authority). Thus, the holding in *Rohlfing v. Second Judicial District Court* is not applicable under these circumstances. 106 Nev. 902, 906, 803 P.2d 659, 662 (1990) ("The district courts of this state have equal and coextensive jurisdiction; therefore, the various district courts lack jurisdiction to review the acts of other district courts.").

Here, the Association initially moved for declaratory relief from Judge Earl on the issue of whether Oxbow and El Capitan had an affiliate/declarant relationship. Oxbow, on the other hand, moved for Judge Wiese to grant summary judgment. In granting summary judgment, Judge Wiese did not make a determination as to the affiliate/declarant relationship, but instead held that Oxbow is not responsible for warranties under the statutory scheme because it is not a seller. Thus, Judge Weise did not rule on the affiliate/declarant issue, which a previous judge had determined required further discovery, but instead viewed the issue in a different light. *See Sittner*, 692 P.2d at 736 (recognizing that a "second judge may reverse the first judge's ruling if the issues decided by the first judge are presented to the second judge in a 'different light'"). Therefore, the district court did not err in granting summary judgment, as the Association contends, on the basis that it exceeded its authority by considering Oxbow's motion for summary judgment.

We therefore,

(O) 1947A

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.

_____, C.J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

cc:    Hon. Jerry A. Wiese, District Judge
       Salvatore C. Gugino, Settlement Judge
       Fenton Grant Mayfield Kaneda & Litt, LLP
       Koeller Nebeker Carlson & Haluck, LLP/Las Vegas
       Eighth District Court Clerk