140 Nev., Advance Opinion 59

IN THE SUPREME COURT OF THE STATE OF NEVADA

---

HI-TECH AGGREGATE, LLC,
Appellant,
vs.
PAVESTONE, LLC, A FOREIGN
LIMITED LIABILITY CORPORATION
AUTHORIZED TO DO BUSINESS IN
NEVADA,
Respondent.

No. 86320

**FILED**

SEP 19 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

---

Appeal from a district court amended judgment following a bench trial in a contract and tort action. Eighth Judicial District Court, Clark County; Mark R. Denton, Judge.

*Affirmed in part and reversed in part.*

Dennett Winspear, LLP, and Ryan L. Dennett and Matthew A. Sarnoski, Las Vegas,
for Appellant.

Lipson Neilson P.C. and J. William Ebert, Las Vegas; Smith, Currie & Hancock LLP and Ronald G. Robey, Las Vegas,
for Respondent.

---

BEFORE THE SUPREME COURT, STIGLICH, PICKERING, and PARRAGUIRRE, JJ.

24-34561

By the Court, STIGLICH, J.:

In this opinion, we reach the issues of what level of knowledge a supplier must have to be held liable for breach of the warranty of fitness for a particular purpose and whether the economic loss doctrine precludes relief on negligence and products liability claims. Here, Hi-Tech Aggregate, LLC, supplied Pavestone, LLC, with aggregate, which Pavestone used to manufacture pavers. After receiving customer complaints of efflorescence developing on the pavers, Pavestone sued Hi-Tech under contract and torts theories, including breach of warranty and products liability. The district court ruled for Pavestone on both claims.

In determining that Hi-Tech's sale of aggregate to Pavestone carried with it an implied warranty of fitness for a particular purpose because Hi-Tech had reason to know of Pavestone's intended usage for the goods it purchased, we adopt the reasoning of Uniform Commercial Code § 2-315 official comment 1 that a buyer does not need to prove a seller's actual knowledge where the seller had reason to know of the product's intended purpose. Similarly, in holding that Pavestone was excused from failing to test the aggregate for the defect, we adopt UCC § 2-316 comment 8, which states that a warranty is not excluded when there is a latent defect in the goods and a simple examination would not reveal the latent defect.

We reverse the district court, however, as to its determination that the economic loss doctrine does not bar Pavestone's noncontractual claims. In so doing, we take this opportunity to reiterate that the economic loss doctrine applies only when the damage is to the product itself, not when there is damage to other property. Here, we hold that the economic loss doctrine precludes Pavestone's noncontractual claims because Pavestone



did not provide sufficient facts to show there was damage to property other than the product itself. Accordingly, we affirm in part and reverse in part.

## FACTS

Hi-Tech operates a mining and processing operation. It sells gravel and sand, known as aggregate. Pavestone manufactures pavers used to construct sidewalks and driveways. In 2019, Pavestone purchased aggregate from Hi-Tech to make into pavers. The arrangement was informal. Pavestone would call Hi-Tech to order, and Hi-Tech would send a written invoice in response. Pavestone would send trucks to pick up the aggregate and then would test the aggregate's particle size. It never tested any other attribute of the aggregate. Pavestone's only specification to Hi-Tech was for "washed alluvial aggregate," which comes from the bottom of a riverbed. Each invoice contained only one line that read either "Pavestone sand," "masonry sand," or "mortar sand."

In December 2019, Pavestone began to receive complaints from customers that their driveways and sidewalks had developed an "unsightly crust" on the surface of the pavers. Some rocks and landscaping adjacent to the driveways also developed this crust. In response, Pavestone replaced the defective pavers with its existing inventory. When Pavestone received more complaints from customers about the efflorescence on the pavers, it investigated its production process and determined that the cause of the efflorescence was sodium carbonate in Hi-Tech's aggregate that manifested when the pavers became wet. At the time, no one in the industry tested aggregate for sodium carbonate, which is why Pavestone had not tested for it earlier. Furthermore, the sodium ions were not visible to the naked eye and would not have been spotted without a test. Because Hi-Tech was its only supplier of aggregate at the time, Pavestone identified Hi-Tech's aggregate as the cause of the defect and switched suppliers.



Pavestone filed a complaint against Hi-Tech alleging negligence, products liability, breach of contract, and breach of warranty.[1] The district court conducted a two-day bench trial and found for Pavestone on its claims for breach of the warranty of fitness for a particular purpose and products liability. Hi-Tech appeals.

## DISCUSSION

### Standard of review

We review de novo a district court's legal conclusions following a bench trial. *Wells Fargo Bank, N.A. v. Radecki*, 134 Nev. 619, 621, 426 P.3d 593, 596 (2018). "[W]e will not overturn the district court's findings of fact unless they are clearly erroneous or not supported by substantial evidence." *Yount v. Criswell Radovan, LLC*, 136 Nev. 409, 414, 469 P.3d 167, 171 (2020) (internal quotation marks omitted). "Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion." *Whitemaine v. Aniskovich*, 124 Nev. 302, 308, 183 P.3d 137, 141 (2008).

### Hi-Tech's sale carried with it an implied warranty of fitness for a particular purpose

Hi-Tech argues that it did not know of Pavestone's particular purpose because it did not know that Pavestone needed a sodium-free aggregate due to its particular paver-manufacturing process, which it argues falls beyond the scope of any warranty. It further argues that even if it knew of the particular purpose, this alleged knowledge was not enough

---

[1] We do not reach the negligence claim because neither party alleges that the district court erred by not addressing the negligence claim. *See Douglas Disposal, Inc. v. Wee Haul, LLC*, 123 Nev. 552, 557 n.6, 170 P.3d 508, 512 n.6 (2007) ("The district court did not address this issue. Therefore, we need not reach the issue.").

to hold it liable because Pavestone must prove that Hi-Tech "participated in the selection of the product for that particular purpose."

Pavestone counters that the evidence demonstrated a breach of the implied warranty of fitness for a particular purpose. It argues that Hi-Tech knew the particular purpose for which its aggregate was intended and that the evidence showed that Pavestone relied on Hi-Tech because Pavestone had no role in selecting the aggregate.

The Uniform Commercial Code (UCC) is codified in NRS Chapter 104. In Nevada, two implied warranties on sales of goods governed by the UCC exist. *Long v. Flanigan Warehouse Co.*, 79 Nev. 241, 245, 382 P.2d 399, 402 (1963). These are the warranty of merchantability and the warranty of fitness for a particular purpose, *id.*, and both are implied as a matter of law into every contract for the sale of goods under the UCC, unless disclaimed in writing. NRS 104.2314(1). Relevant here, NRS 104.2315 governs the implied warranty of fitness for a particular purpose. This warranty applies when "the seller at the time of contracting has reason to know any particular purpose for which the goods are required" and "the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." NRS 104.2315.

Comment 2 of UCC § 2-315, the analog of NRS 104.2315, explains that a particular purpose is different from an ordinary purpose in that the goods have a "specific use by the buyer which is peculiar to the nature of his business." U.C.C. § 2-315 cmt. 2; *see Edelstein v. Bank of N.Y. Mellon*, 128 Nev. 505, 523, 286 P.3d 249, 261 (2012) (relying on UCC official comments as persuasive authority). A buyer does not have to prove a seller's actual knowledge of the particular purpose for which the goods are

SUPREME COURT
OF
NEVADA

(O) 1947A

5

intended where the seller had reason to know the intended purpose. U.C.C. § 2-315 cmt. 1.

And buyer reliance exists, for instance, when a buyer relies on the judgment and selection of the seller. *Mohasco Indus., Inc. v. Anderson Halverson Corp.*, 90 Nev. 114, 119, 520 P.2d 234, 236 (1974). There is no buyer reliance, however, when the buyer uses its own judgment, makes its own selection, or supplies the seller with its own specifications. *Id.* For example, in *Mohasco*, this court held that there was no buyer reliance where the buyer of allegedly defective carpet specified "the type and length of yarn, weight per square yard, type of weave, color[,] and pattern" and the manufacturer provided precisely what the buyer requested. *Id.* at 116, 520 P.2d at 234-35. Consequently, this court concluded that a warranty of fitness could not be implied under the circumstances. *Id.* at 119, 520 P.2d at 236.

We conclude that the district court properly found that Pavestone's purchase carried with it an implied warranty of fitness of a particular purpose and that Hi-Tech knew of Pavestone's intended usage. Pavestone intended to use the aggregate it bought from Hi-Tech to make pavers for driveways and sidewalks. Pavestone needed to prove only that Hi-Tech had reason to know the intended purpose, and the district court did not err in concluding it did because there is substantial evidence in the record showing that Hi-Tech knew that the aggregate was to be made into pavers for driveways. Specifically, Blaine J. Rees, the owner and manager of Hi-Tech, testified that he knew that Hi-Tech was supplying aggregate for use in pavers, although he did not know the process, and that he knew the pavers were used for driveways. Furthermore, the district court found that the aggregate was not suitable for use as pavers because the excess sodium

SUPREME COURT
OF
NEVADA

6

(O) 1947A

content was aesthetically unsuitable for driveways and sidewalks. Because Hi-Tech knew that the pavers were to be used for driveways, it had reason to know the importance of appearance in the paver-manufacturing process.

There is also substantial evidence showing that Pavestone relied on Hi-Tech's skill or judgment to select the aggregate. Pavestone allowed Hi-Tech to pick the specifications of the aggregate, trusting that it would be suitable for its use. Unlike in *Mohasco* where the respondent asked for yarn with particular specifications, Pavestone did not provide any specifications except for washed alluvial sand. The record contains testimony that there were no "discussions between Pavestone and Hi-Tech about requirements for the sand aside from particle size." As there was no written contract, Pavestone would call Rees to order, and Hi-Tech would send an invoice. Other testimony established that Pavestone would request washed alluvial aggregate, and invoices introduced into evidence stated that Pavestone ordered "Pavestone sand," "masonry sand," or "mortar sand." Pavestone did not specify the chemical composition, level of sodium carbonate, or mining process. Thus, there is substantial evidence that Pavestone relied on Hi-Tech's skill and judgment in selecting appropriate aggregate.

Furthermore, the district court's determination that Hi-Tech breached the implied warranty is supported by substantial evidence. The record shows that the aggregate was not fit for its particular purpose because the excess sodium caused an efflorescence that rendered it defective for use in the paver industry.

SUPREME COURT
OF
NEVADA

(O) 1947A

Hi-Tech, however, asserts it had a defense to Pavestone's implied-warranty claim due to Pavestone's failure to test the aggregate for anything other than particle size. Sellers have a defense for a buyer's failure to detect a defect if the buyer examines the goods before entering into a contract with the seller or refuses to examine the goods. NRS 104.2316(3)(b). In that case, "there is no implied warranty with regard to any defects" that would have been revealed to the buyer through such an examination. *Id.* In contrast, a "professional buyer examining a product in his field will be held to have assumed the risk as to all defects which a professional in the field ought to observe." U.C.C. § 2-316 cmt. 8. A failure to notice obvious defects cannot excuse the buyer, but the buyer would be excused when there is an examination in circumstances that do not permit a certain type of testing and the examination fails to identify the defect that could only be ascertained by that type of testing. *Id.* A buyer is also excused when there is a latent defect and a simple examination would not reveal the latent defect. *Id.*

Pavestone conceded it only tested the particle size of the sand and not the sodium content. A witness for Pavestone testified that neither Pavestone nor any other industry peer, however, traditionally tested for sodium content. Furthermore, because sodium ions are invisible to the naked eye, neither Pavestone nor Hi-Tech could have noticed the sodium without chemically testing the aggregate. Therefore, the defect in the aggregate was latent. Because the excess sodium content constituted a latent defect that could not have been observed with a simple examination, Pavestone was excused from an obligation to inspect the aggregate, and this defect falls within the scope of the implied warranty of fitness.

Accordingly, because Hi-Tech knew Pavestone's particular purpose for the aggregate and Pavestone relied on Hi-Tech in purchasing it, the sale of the aggregate contained an implied warranty of fitness. Because the defective aggregate caused a financial loss that was not excused by a defense, the district court did not err in concluding that Hi-Tech breached the implied warranty of fitness for a particular purpose.

*The economic loss doctrine precludes Pavestone's noncontractual claims*

Turning to Pavestone's tort claims, Hi-Tech argues that the economic loss doctrine bars Pavestone's products liability claims because the evidence presented fails to illustrate either noneconomic injuries or property damage. It also argues that even if these claims were not precluded, the district court's finding that there was a product defect is not supported by substantial evidence. Pavestone counters that the economic loss doctrine does not bar its products liability claim because the district court found damage to property beyond the aggregate and pavers. It argues that substantial evidence supports the district court's finding of damage to other property and that Hi-Tech failed to refute that the aggregate caused damage to other property.

"The economic loss doctrine is a judicially created rule that primarily emanates from products liability jurisprudence" and bars "unintentional tort actions when the plaintiff seeks to recover purely economic losses." *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 125 Nev. 66, 72-73, 206 P.3d 81, 85-86 (2009) (internal quotation marks omitted). A purely economic loss is a loss of value, such as "the cost of repair and replacement of a defective product," "without any claim of personal injury or damage to other property." *Calloway v. City of Reno*, 116 Nev. 250, 257, 993 P.2d 1259, 1263 (2000) (internal quotation marks omitted), *superseded by statute on other grounds as stated in Olson v. Richard*, 120

SUPREME COURT
OF
NEVADA


(O) 1947A

Nev. 240, 243, 89 P.3d 31, 32-33 (2004). The policy behind the economic loss doctrine is that when there is no personal injury or property damage, "remedies are properly addressed through contract law." *Terracon*, 125 Nev. at 79, 206 P.3d at 90.

To determine whether the economic loss doctrine applies, we consider whether there are allegations of personal injury or damage to property other than the product itself. When products contain multiple components that make up an integrated whole, we do not consider damage to the component parts to be damage to other property, but rather only damage to the product itself. *See Calloway*, 116 Nev. at 262, 993 P.2d at 1267 (holding that "component parts of a product cannot cause 'other property damage' compensable in tort"). For instance, the engine of an airplane is a component of an airplane, so if the engine explodes and injures the airplane, the airplane injured itself and there are only economic losses. *Calloway*, 116 Nev. at 264, 993 P.2d at 1268. In *Calloway*, we concluded that the economic loss doctrine barred claims where a heating and plumbing system damaged an apartment building, reasoning that the building "injured itself." *Id.* at 263-64, 993 P.2d at 1268 (internal quotation marks omitted).

Comment e to Section 21 of the Third Restatement of Torts also articulates this rule, stating "when the product or system is deemed to be an integrated whole, courts treat such damage as harm to the product itself," and when this occurs, the damage is "excluded from the coverage of this Restatement." Restatement (Third) of Torts: Prod. Liab. § 21 cmt. e (1998).

SUPREME COURT
OF
NEVADA

(O) 1947A

10

In *Wausau Tile, Inc. v. County Concrete Corp.*, the Wisconsin Supreme Court applied this rule in a factually similar scenario. 593 N.W.2d 445, 452-53 (Wis. 1999). There, a company that manufactured and sold pavers for walkways asserted various contract and tort claims against its cement and aggregate suppliers when the pavers expanded and cracked. *Id.* at 449. The Wisconsin Supreme Court concluded that any damage to the pavers constituted solely economic loss because the pavers were integrated systems consisting of several components, including cement. *Id.* at 453. The court concluded that even third parties' claims of "damage to the property adjoining the pavers" did not allege "any personal injury or property damages" on the appellant's part. *Id.* at 454. Therefore, the economic loss doctrine barred the negligence and strict liability tort claims. *Id.* at 460.

"The Restatement (Second) of Torts [§] 402A governs strict product liability." *Rivera v. Philip Morris*, 125 Nev. 185, 193, 209 P.3d 271, 276 (2009). It provides that

> (1) [o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Restatement (Second) of Torts § 402A(1) (1965). To prove a strict liability claim, the plaintiff must demonstrate that "[(1)] the product had a defect which rendered it unreasonably dangerous, [(2)] the defect existed at the time the product left the manufacturer, and [(3)] the defect caused the

plaintiff's injury." *Fyssakis v. Knight Equip. Corp.*, 108 Nev. 212, 214, 826 P.2d 570, 571 (1992).

We hold that the economic loss doctrine precludes Pavestone's tort claims because there is insufficient evidence of damage to property other than the product itself. Pavestone alleges two types of property damage: (1) to the driveways and sidewalks and (2) to the landscaping adjacent to the driveway. Here, the damage to the driveways and sidewalks is the type of damage barred by the economic loss doctrine. Because the defective aggregate is a component of the paver, which is a component of the driveway or sidewalk, the driveways and sidewalks are integrated systems. Any damage to the driveway or sidewalk, therefore, is the aggregate and paver injuring itself. Consequently, any claim to remove or repair damage to a driveway or sidewalk is only a claim for economic loss. *See Terracon*, 125 Nev. at 69, 206 P.3d at 83 (explaining that the cost of repair and replacement for a defective product is purely economic loss).

Unlike the driveways and sidewalks, however, the landscaping adjacent to the driveway is not a part of the driveway. The aggregate and pavers do not make up the components of the landscaping, which consist of rocks and plants. Pavestone, however, does not support its argument that damage to the surrounding landscaping caused it an injury and therefore alleges only economic damages. Pavestone alleged below that it "removed and replaced" the defective pavers, but it failed to present evidence of alleged damage to other property, including the landscaping. Pavestone's expert witness offered little insight into the alleged damage, simply stating that the rock on the sides of the driveway turned white. The photographs Pavestone entered into evidence show that the rocks adjacent to the sidewalk are discolored, but Pavestone did not demonstrate whether the

discoloration was due to the defective aggregate and, if so, what was required to fix the damage. Furthermore, the district court's finding of damage to "other property," is not supported by substantial evidence. Absent evidence that other property was damaged, Pavestone's damages were purely economic loss, and the economic loss doctrine precludes Pavestone's tort claims, including its products liability claim.

## CONCLUSION

The implied warranty of fitness for a particular purpose applies not just when a seller had actual knowledge of the buyer's intended purpose but also in cases in which the seller had reason to know of the particular purpose. Furthermore, a warranty is not excluded when there is a latent defect in the goods that a simple examination would not detect. Additionally, the economic loss doctrine precludes torts claims where the only damage was to the product itself. Here, we conclude that Hi-Tech's sale of goods carried with it an implied warranty of fitness for a particular purpose because Hi-Tech knew of the particular purpose of the aggregate and Pavestone relied on Hi-Tech's skill and judgment. Hi-Tech then breached the warranty when it provided Pavestone with a product unfit for commercial paving. Pavestone is excused from not identifying the defect because it was latent and could not have been detected with a simple examination. We also conclude that the economic loss doctrine precludes Pavestone's noncontractual claims because Pavestone did not provide sufficient evidence of other property damage. In so holding, we reiterate

that the economic loss doctrine bars tort claims in cases in which there is no personal injury or property damage. Accordingly, we affirm the district court's judgment as to Pavestone's warranty claim but reverse its judgment regarding Pavestone's products liability claims.

_____, J.
Stiglich

We concur:

_____, J.
Pickering

_____, J.
Parraguirre